IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————————

No. 94-60010

————————————

JOAN M. LAKOSKI, PH.D., ET AL.,

                                        Plaintiffs,

JOAN M. LAKOSKI, PH.D.,

                                        Plaintiff-Appellee,
                                        Cross-Appellant,

        versus

THOMAS M. JAMES, M.D., ET AL.,

                                        Defendants,

THE UNIVERSITY OF TEXAS MEDICAL BRANCH
AT GALVESTON,

                                        Defendant-Appellant,
                                        Cross-Appellee,

————————————

Appeals from the United States District Court
for the Southern District of Texas

————————————

(October 3, 1995)

Before HIGGINBOTHAM, SMITH, and STEWART, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

        Rather than seek redress under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e et seq., Dr. Joan Lakoski sued the
University of Texas Medical Branch at Galveston under Title IX of
the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and 42
U.S.C. § 1983, alleging that the University intentionally

discriminated against her on the basis of sex in denying her tenure. After a jury trial, the district court granted judgment to Lakoski and awarded her $150,000 in damages, plus attorneys' fees. The University appeals, claiming that Title IX does not provide a private right of action for employment discrimination either directly or derivatively through 42 U.S.C. § 1983. Dr. Lakoski cross-appeals the district court's remittitur of damages and fee award. We have jurisdiction over this timely appeal from a final judgment. 28 U.S.C. § 1291. We are persuaded that Title VII afforded Dr. Lakoski the exclusive means of relief, and we reverse and render judgment for the University.

I.

In 1984, Dr. Lakoski joined the University's faculty as a tenure-track assistant professor in the Department of Pharmacology. Under its tenure policy, the University reviewed junior faculty members for tenure by the beginning of their eighth year at the latest. Lakoski sought and was denied promotion three times: in 1988, 1989, and 1990. In February 1991, the department's tenure committee recommended that Dr. Lakoski not be considered for tenure in the future. The University offered Lakoski another position with a significant salary increase, but she rejected the offer. Cary Cooper, the departmental chairman, later informed Dr. Lakoski that her 1991-1992 appointment was her last at the University.

Less than a month before her final appointment was to expire, Dr. Lakoski sued the University and three University officials, alleging that the denial of tenure and her termination constituted

intentional sex discrimination in violation of Title IX, 42 U.S.C. § 1983, and state tort law.  Although Lakoski's complaint was not clear on this point, her § 1983 claims were evidently based upon both the Fourteenth Amendment and Title IX.  Significantly, Dr. Lakoski did not file a charge with the Equal Employment Opportunity Commission, nor did she plead that the University violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

Upon filing the suit, Dr. Lakoski sought a preliminary injunction preventing her scheduled termination.  Under an agreement with the University, Dr. Lakoski remained on the faculty pending the outcome of the trial.  She later accepted a tenure-track position at Pennsylvania State University.

The defendants moved to dismiss Lakoski's suit.  The individual defendants claimed qualified immunity and the University argued that there was no implied private right of action under Title IX for damages for employment discrimination.  A magistrate judge rejected both contentions but dismissed the § 1983 claims against the University, noting that although the § 1983 claims appear to be asserted only against the individual defendants, "insofar as [Lakoski] asserts a § 1983 cause of action against UTMB, that claim must be dismissed" because of the Eleventh Amendment.  The magistrate judge did not distinguish between a § 1983 claim based upon the Fourteenth Amendment and a § 1983 claim based upon Title IX.  The district court adopted the magistrate's recommendations and dismissed Lakoski's § 1983 claims without elaboration.

3

At trial, Lakoski presented evidence suggesting that the University, in evaluating her for promotion and tenure, employed standards by which male faculty members were not judged. The University countered that it denied Lakoski tenure because of the paucity of her peer-reviewed articles and her inability to sustain collegial relationships in her department.

At the close of Lakoski's case, the district court dismissed all the claims against the individual defendants, leaving only the University to defend the Title IX claim and, apparently, the § 1983 claim based upon Title IX. Though not entirely clear, the record indicates that the district court presented these two claims to the jury as a joint claim, even though the earlier dismissal of Lakoski's § 1983 claims had not explained whether the § 1983 claim asserting rights secured by Title IX was included in the order of dismissal. The jury found that the University intentionally discriminated against Dr. Lakoski on the basis of sex and awarded her damages of $250,000. The court later reduced the damages to $150,000 plus attorneys' fees. The University now appeals the resulting judgment, and Dr. Lakoski appeals the remittitur and fee award.

## II.

Critical to our resolution of this case is the fact that, although Dr. Lakoski possessed a colorable claim of employment discrimination in violation of Title VII, she chose not to pursue the remedy made available by Title VII. Title VII provides an administrative procedure in which an aggrieved individual must

first pursue administrative remedies before seeking judicial relief. See 42 U.S.C. § 2000e-5. Dr. Lakoski chose to circumvent this procedure and immediately assert her rights under Title IX both directly and derivatively through 42 U.S.C. § 1983.

We are not persuaded that Congress intended that Title IX offer a bypass of the remedial process of Title VII. We hold that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions. We limit our holding to individuals seeking money damages under Title IX directly or derivatively through § 1983 for employment practices for which Title VII provides a remedy, expressing no opinion whether Title VII excludes suits seeking only declaratory or injunctive relief.

### III.

Dr. Lakoski argues that Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), and Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), sum to an implied private right of action for damages under Title IX for employment discrimination. Cannon held that a woman denied admission to a federally funded school because of her sex enjoys an implied private right of action under Title IX. 441 U.S. at 709. Bell upheld federal regulations issued under Title IX prohibiting employment discrimination on the basis of sex at federally funded educational institutions. 456 U.S. at 530. Finally, Franklin held that a student harassed by her

5

teacher may seek money damages in a private suit for the violation of Title IX. 503 U.S. at 63.

We must disagree with Dr. Lakoski's jurisprudential arithmetic. Unlike Dr. Lakoski's suit, neither Cannon nor Bell nor Franklin required the Court to address the relationship between Title VII and Title IX. Both Cannon and Franklin involved claims of prospective or current students at federally funded educational institutions; neither involved a claim of employment discrimination by an employee of those schools. Bell addressed Title IX's prohibition of employment discrimination in a challenge to the validity of administrative regulations terminating federal funding of educational institutions that discriminated on the basis of sex in their employment practices. Bell was not a claim by an individual for money damages for discrimination. In Bell, unlike here, a private remedy for aggrieved employees under Title VII did not affect, much less undermine, the validity of regulations for terminating federal funding. 503 U.S. at 535 n.26. In short, Cannon, Bell, and Franklin all presented legal questions in which Title VII hovered on the distant horizon, if it was implicated at all. Here, Title VII occupies center stage.

Given the availability of a private remedy under Title VII for aggrieved employees, we are unwilling to follow Dr. Lakoski's beguilingly simple syllogism that Cannon, Bell, and Franklin all add up to an implied private right of action for damages under Title IX for employment discrimination. Doing so would disrupt a carefully balanced remedial scheme for redressing employment

6

discrimination by employers such as the University of Texas Medical Branch. We are unwilling to do such violence to the congressionally mandated procedures of Title VII. We hold that the district court erred in submitting Dr. Lakoski's Title IX claim for damages to the jury.[1]

IV.

Confusing both Lakoski and the University, the district court submitted to the jury Lakoski's § 1983 claim based upon Title IX as well as her Title IX claim, at least the record so suggests. If true, the district court erred.

A.

Section 1983 encompasses claims based upon rights secured by federal statutes as well as by the United States Constitution. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, a statute may provide "remedial devices . . . sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n., 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

To determine whether Congress intended to foreclose the § 1983 remedy for rights created by a federal statute, courts look to the remedial measures provided by the statute itself. See, e.g., Alexander v. Chicago Park Dist., 773 F.2d 850, 856 (7th Cir. 1985)

---

[1] See also Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427, 893 F.Supp. 808, 815 (N.D. Ill. 1995) (holding that Title VII preempts Title IX employment discrimination action).

("Since Title VI provides its own remedial scheme, we hold that private actions based on Title VI may not be brought under § 1983."), cert. denied, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

Title IX provides limited remedies for victims of employment discrimination.  Termination of federal funding is the sole remedy expressly available for violations of Title IX.  See 42 U.S.C. § 1682; 34 C.F.R. § 106.71; see also North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 552, 102 S.Ct. 1912, 1934, 72 L.Ed.2d 299 (1982) (Powell, J., dissenting) (noting that Title IX "contains only one extreme remedy, fund termination"); Dougherty Cty. School System v. Harris, 622 F.2d 735, 736 (5th Cir. 1980) (noting that termination of funding is Title IX's "primary sanction"), cert. granted and judgment vacated, 456 U.S. 986, 102 S.Ct. 2264, 73 L.Ed.2d 1280 (1982).  We cannot say that Title IX provides a remedial scheme sufficiently comprehensive to indicate by itself that Congress intended to foreclose § 1983 suits based upon rights created by Title IX.

We ought not, however, confine our inquiry into congressional intent to the remedies afforded by Title IX.  Congress chose a variety of tools to remedy employment discrimination.  Title IX's prohibition of sex discrimination in federally funded educational institutions is part of a larger federal legislative scheme designed to protect individuals from employment discrimination on the basis of sex.  Compare 20 U.S.C. § 1681 et seq. (Title IX) with 42 U.S.C. § 2000e et seq. (Title VII) and 29 U.S.C. § 206(d) (Equal

8

Pay Act). To focus exclusively on Title IX's remedies would ignore this larger federal scheme and the remedies provided by it, particularly those of Title VII.

## B.

We are persuaded that Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination. In Great American Federal Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 378, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Court held that Title VII preempts § 1985 actions alleging violations of Title VII rights. Confronting a situation much like the one before us, the Court noted that "[i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of [Title VII's] detailed and specific provisions of the law [and] . . . . could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." Id. at 375, 376. In addition, the Court in Brown v. General Servs. Admin., 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), held that Title VII provides the exclusive judicial remedy for federal employees' claims of employment discrimination. In Brown, the Court expressly noted that "[i]n a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies." Id. at 834.

Drawing upon this body of Supreme Court precedent, we held in Irby v. Sullivan, 737 F.2d 1418, 1428 (5th Cir. 1984), that Title VII is the exclusive remedy for violations of rights created by

9

Title VII itself.  Following <u>Novotny</u>, we concluded that "unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1983." <u>Id.</u> (citation, internal quotation marks, and alterations omitted); <u>see also</u> <u>Johnston v. Harris Cty. Flood Control Dist.</u>, 869 F.2d 1565, 1574 (5th Cir. 1989) (noting that "a violation of § 704(a) of Title VII, alone, will not constitute an underlying statutory violation for purposes of imposing liability under § 1983"), <u>cert. denied</u>, 493 U.S. 1019, 110 S.Ct. 1019, 107 L.Ed.2d 738 (1990). Other circuits have agreed, holding that Title VII's comprehensive remedial scheme precludes § 1983 suits based upon violations of Title VII rights.  <u>See</u> <u>Day v. Wayne Cty. Bd. of Auditors</u>, 749 F.2d 1199, 1204 (6th Cir. 1984); <u>Alexander</u>, 773 F.2d at 856; <u>Allen v. Denver Pub. Sch. Bd.</u>, 928 F.2d 978, 982 (10th Cir. 1991). Indeed, the "precisely drawn, detailed enforcement structure" of Title VII provides the exclusive remedy for Title VII rights.  <u>Polson v. Davis</u>, 895 F.2d 705, 710 (10th Cir. 1990).

We recognize that the legislative history of the Equal Employment Opportunity Act of 1972, which extended Title VII to state and local governmental employees such as Dr. Lakoski, discloses that Congress did not intend Title VII to preempt § 1983 claims based upon rights already held by individuals, such as constitutional rights.  The House report accompanying the Act stated:

> In establishing the applicability of Title VII to State
> and local employees, the Committee wishes to emphasize

10

that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected. . . . Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination. Two recent court decisions have affirmed this Committee's belief that the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive. The bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

H.R.Rep. No. 238, 92d Cong., 1st Sess. (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2154.[2]

However, that Congress in extending Title VII's protective umbrella to state and local governmental employees did not intend Title VII to preempt § 1983 suits based upon "rights that such individuals have already been granted" -- such as constitutional rights -- says nothing about Congress' intent regarding Title IX. Title IX did not exist at the time that the House report was drafted nor at the time that the Equal Employment Opportunity Act of 1972 was enacted. Reviewing the House Report, the Sixth Circuit in Day v. Wayne County Bd. of Auditors rejected the idea that Congress intended, outside the narrow confines of conduct that

---

[2] The minority report objected to the Act on the ground that it did not make Title VII the exclusive remedy for employment discrimination, noting that "[d]espite the enactment of title VII of the Civil Rights Act, charges of discriminatory employment conditions may still be brought under prior existing federal statutes such as the National Labor Relations Act and the Civil Rights Act of 1866." H.R. Rep. No. 238, 92d Cong., 1st Sess. (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2175.

11

violated both Title VII and other, pre-existing federal rights, to permit individuals to circumvent Title VII's procedures:

> We believed the [House] committee referred to the right to sue under § 1983 for constitutional violations or for violation of statutes which protected such employees before the enactment of the 1972 amendments. Claims under these existing laws were not affected; they could be pursued along with claims under Title VII for the purpose of obtaining additional remedies. However, we do not read this language as expressing an intent that where employer conduct violates only Title VII, which created new rights and remedies for public employees, an aggrieved employee may sue under both Title VII and § 1983.

749 F.2d at 1204-05.

Congress enacted Title IX only months after extending Title VII to state and local governmental employees. That Congress intended to create a bypass of Title VII's administrative procedures so soon after its extension to state and local governmental employees is an extraordinary proposition. Title IX's similarity to Title VII belies the contention. Although phrased differently,[3] both Title VII and Title IX protect individuals from employment discrimination on the basis of sex. Any difference between their prohibitions of sex discrimination is not compelled by statutory language.

---

[3]    Compare 42 U.S.C. § 2000e-2(a)(1) (providing that it shall be unlawful for employers, which include state and local governments, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex") with 20 U.S.C. § 1681(a) (providing that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance").

The legislative history of the Education Amendment of 1972 also suggests that the Title IX right to be free from sex discrimination in employment is no different from the Title VII right. At the time that Congress began to consider the legislation that would eventually become the Education Amendments of 1972, Title VII exempted educational institutions from its coverage. As a consequence, the original House bill proposed amending Title VII of the Civil Rights Act of 1964 to remove the exemption for educational institutions. See H.R. 7248, 92d Cong., 1st Sess. § 1006 (1971). The House Report accompanying the Education Amendments of 1972 explained:

> One of the single most important pieces of legislation which has prompted the cause of equal employment opportunity is Title VII of the Civil Rights Act of 1964 which prohibits discrimination in private employment based on race, color, religion, sex or national origin. The Act prohibits any practice by employers which would tend to discriminate against an employee or prospective employee on the basis of that person's race, religion, sex or national origin. Title VII, however, specifically excludes educational institutions from its terms. The title would remove that exemption and bring those in education under the equal employment provision.

H.R.Rep. No. 554, 92d Cong., 1st Sess. (1971), reprinted in 1972 U.S.C.C.A.N. 2462, 2512. The passage of the Equal Employment Opportunity Act of 1972, which removed Title VII's exemption for educational institutions as well as extending Title VII's coverage to state and local government employees, obviated the need for the Education Amendments to close the loophole in Title VII. The final bill enacted by Congress omitted the language amending Title VII but left the provision prohibiting sex discrimination in federally funded educational institutions.

13

The House report's reference to Title VII suggests that, in enacting Title IX, Congress chose two remedies for the same right, not two rights addressing the same problem. Title VII provided individuals with administrative and judicial redress for employment discrimination, while Title IX empowered federal agencies that provided funds to educational institutions to terminate that funding upon the finding of employment discrimination. In other words, Congress intended to bolster the enforcement of the pre-existing Title VII prohibition of sex discrimination in federally funded educational institutions; Congress did not intend Title IX to create a mechanism by which individuals could circumvent the pre-existing Title VII remedies.

Administrative regulations also suggest that Title IX's proscription of sex discrimination, when applied in the employment context, does not differ from Title VII's. Department of Justice regulations governing procedures for investigating charges of employment discrimination brought under Title IX provide that "[i]n any investigation, compliance review, hearing or other proceeding, agencies shall consider title VII case law and EEOC Guidelines, 29 CFR parts 1604 through 1607, unless inapplicable, in determining whether a recipient of Federal financial assistance has engaged in an unlawful employment practice." 28 C.F.R. § 42.604 (1994). The Equal Employment Opportunity Commission's regulations adopt an

14

identical view of Title IX's scope.  <u>See</u> 29 C.F.R. § 1691.4 (1994).[4]

Finally, other circuit courts have acknowledged that the prohibitions of discrimination on the basis of sex of Title IX and Title VII are the same.  <u>See</u> <u>Preston v. Commonwealth of Va. ex rel. New River Community College</u>, 31 F.3d 203, 206 (4th Cir. 1994) (holding that Title VII principles govern claims of employment discrimination under Title IX); <u>Roberts v. Colorado State Bd. of Agric.</u>, 998 F.2d 824, 832 (10th Cir.), <u>cert. denied</u>, 114 S.Ct. 580, 126 L.Ed.2d 478 (1993); <u>Lipsett v. University of Puerto Rico</u>, 864 F.2d 881, 897 (1st Cir. 1988); <u>Mabry v. State Bd. of Community Colleges & Occupational Educ.</u>, 813 F.2d 311 (10th Cir.), <u>cert. denied</u>, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987).[5]

---

[4] Regulations promulgated by agencies charged with enforcing Title IX provide that "[t]he obligations imposed by [Title IX] are independent of, and do not alter, obligations not to discriminate on the basis of sex imposed by . . . Title VII of the Civil Rights Act of 1964."  <u>See</u> 34 C.F.R. § 106.6(a); <u>see</u> <u>also</u> 7 C.F.R. § 15a.5(a); 10 C.F.R. § 1040.24(a); 45 C.F.R. § 86.6(a). However, the reference to Title IX as "independent of" Title VII indicates that the administrative finding of discrimination under Title VII is not a prerequisite to such a finding under Title IX. It does not indicate the entirely different proposition, which is at issue in this case, that Title IX provides an alternative remedy for unlawful employment practices already prohibited by Title VII.

[5] Contrary to these decisions from other circuits, we stated in <u>Chance v. Rice Univ.</u>, 984 F.2d 151, 153 (5th Cir.), <u>reh'g denied</u>, 989 F.2d 179 (5th Cir. 1993), that Title IX claims of employment discrimination are properly analyzed under the intentional discrimination standard of Title VI, not Title VII. However, we later retreated from our statement in <u>Chance</u> that Title VI principles govern Title IX claims of employment discrimination. <u>Chance v. Rice Univ.</u>, 989 F.2d 179, 180 (5th Cir. 1993) (holding that "we therefore need not decide whether [Chance's] claim should have been analyzed under [the Title VII] standard").

15

Given this compelling evidence that Title IX prohibits the same employment practices proscribed by Title VII, we hold that individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly or derivatively through § 1983.

## V.

Title VII offers valuable rights to victims of employment discrimination. We are not persuaded that Congress offered Title IX to employees of federally funded educational institutions so as to provide a bypass to Title VII's administrative procedures. We REVERSE the judgment of the district court and RENDER judgment for the University. The cross-appeal is DISMISSED as moot.