**Dr. Eugene M. DECKER, III, Plaintiff,**

v.

**The UNIVERSITY OF HOUSTON, Dr. Claudine Giacchetti, Dr. Julian Olivares, and Dr. James Pipkin, Defendants.**

**Civil Action No. H-96-1672.**

United States District Court,
S.D. Texas,
Houston Division.

May 5, 1997.

---

Larry Richard Veselka, Smyser, Kaplan & Veselka, Houston, TX, for Plaintiff.

Dennis Garza, Dedra L. Wilburn, Office of Texas Attorney General, General Litigation Div., Austin, TX, for Defendants.

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT

HARMON, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment (Instrument No. 21). After reviewing the motion, the response, and the applicable law, the Court finds that the motion should be granted.

## I. Facts

Plaintiff Eugene Decker, Ph.D. ("Decker") is a tenured associate professor of French and French literature at the University of Houston, where he has taught since 1968. Decker claims to suffer from a weakness of voice and the loss of vocal stamina as a result of radiation treatments he underwent for Hodgkins disease, which was discovered in 1968. He believes that he is physically unable to teach consecutive class periods because of his medical condition. Decker alleges that the Defendants are aware of his condition, but despite this knowledge, they

demand that he teach consecutive class periods.

The Plaintiff also claims that he is the target of a campaign to destroy his career by the Defendants for having reported and refusing to participate in the University's illegal practice of awarding grades for "paper courses" to graduate teaching fellows in order for the University to collect state funds for those courses. He claims this campaign included his receiving inappropriate reviews and disproportionately low pay and promotions.

On May 24, 1996, Decker filed this lawsuit claiming that the Defendants violated the Americans with Disabilities Act, the Texas Whistleblower Act, his constitutional rights under the First and Fourteenth Amendments, and that the Defendants engaged in intentional and negligent infliction of emotional distress, and defamation.

## II. Summary Judgment Standard.

Summary Judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The burden of proof is on the moving party to show an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Once this burden has been met, the nonmoving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The plain language of Rule 56(c) mandates the entry of summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## III. Americans with Disability Act Claim.

The Plaintiff claims that the "Defendants have committed unlawful discrimination under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq." by forcing him to teach consecutive class periods despite their knowledge of his disability, which requires that he rest between lectures. (Pl.'s Compl. ¶ 13). Subchapter or Title II of the ADA governs public services and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Plaintiff did not bring his claim under Title I of the ADA, which governs employment. Title I provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112. Decker also has not filed a charge of discrimination with the United States Equal Employment Opportunities Commission ("EEOC") or the Texas Commission on Human Rights ("TCHR") as required under Title I. *Id.* § 12117.

The Defendants argue that Decker's ADA claim is defective because he failed to satisfy the prerequisites of an ADA suit by not filing a charge of discrimination with the EEOC or the TCHR. The Plaintiff claims that Title I and Title II are distinct but equally viable alternatives for a public employee to seek relief from unlawful disability discrimination. The question before the Court then is whether a public employee may bring an action for employment discrimination against a public employer without satis-

fying the administrative prerequisite of filing a charge of discrimination.

The Attorney General of the United States in "promulgat[ing] regulations in an accessible format that implement" Title II, 42 U.S.C. § 12134(a), has interpreted the ADA to allow public employees to bring private suits against their employers without exhausting administrative remedies. 28 C.F.R. § 35.172. In order to determine whether Dr. Decker is required to file a charge of discrimination before filing his ADA suit, the Court must first review the Department of Justice's construction of the ADA as directed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). *Chevron* requires that courts must apply traditional principles of statutory construction to determine congressional intent. *Id.* at 843, 104 S.Ct. at 2781–82. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781.

The Court finds that it is unambiguous from the plain language of the statute and the statute read as a whole that Congress intended that public employees be required to file a charge of discrimination before bringing an ADA suit. The Court finds additional support for this proposition in examining the other statute that governs disability claims by government employees, the Government Employee Rights Act of 1991, 2 U.S.C. §§ 1201–1220, and by considering the detailed administrative scheme · established by Congress for the resolution of employment discrimination disputes. *Lakoski v. James,* 66 F.3d 751, 755 (5th Cir.1995).

Title II makes it illegal for a public entity to exclude from participation, deny benefits, or discriminate against a qualified individual in its "services, programs, or activities." 42 U.S.C. § 12132. It has no explicit provision governing employment discrimination and a careful reading of the statute makes plain that employment decisions are excluded from Title II's coverage. Employment decisions are "activities" of a public entity in a strictly literal sense. The phrase "services, programs, or activities," however, "understood as a whole, focuses on a public entity's outputs rather than its inputs." *Bledsoe v. Palm Beach Soil and Water Conservation Dist.,* 942 F.Supp. 1439, 1443 (S.D.Fla.1996). In this case, French classes would be an output or service, program, or activity provided by the public entity, the University of Houston, and the input would be the professor hired to teach the class.

"In ascertaining whether the agency's interpretation is a permissible construction of the language, a court must look to the structure and language of the statute as a whole." *National R.R. Passenger Corp. v. Boston & Me. Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992). The Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213, contains four subchapters or titles, only one of which, Title I, deals explicitly with employment. *Id.* §§ 12111–12117. Title I provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112. This title also establishes a detailed administrative review apparatus. *Id.* § 12117(a).

This administrative review process is the same one that Congress created for employment discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended, ("ADEA"). Title VII, the ADEA, and the ADA all require that a plaintiff in a "referral state," such as Texas, where a claimant may file a charge of discrimination with either the EEOC or the TCHR, must file his charge within 300 days of the unlawful discrimination with an appropriate agency before he may commence a civil action. 42 U.S.C. § 2000e–5(e) (Title VII); 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 12117(a) (ADA); *Griffin v. City of Dallas,* 26 F.3d 610, 612–14 (5th Cir.1994). This requirement exists "(1) to give the employer prompt notice of the complaint against it, and (2) to give the EEOC

sufficient time to attempt the conciliation process before a civil action is filed." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1103 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 435, 136 L.Ed.2d 332 (1996).

Allowing public employees to file private suits against their employers under Title II renders Title I and its detailed regulatory scheme redundant. It is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." *Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988). Reading the statute as a whole, it is unambiguous that Congress intended that public employees be required to file a charge of discrimination before bringing an ADA suit. Any other reading simply ignores the ADA's statutory scheme.

An examination of the Government Employee Rights Act of 1991, 2 U.S.C. §§ 1201–1220, the other statute that governs disability claims by government employees, provides additional support for requiring public employees to file a charge of discrimination with the EEOC before bringing an ADA suit. The Government Employee Rights Act, enacted after the ADA, allows employees of state and local governments who are not covered as employees under Title I of the ADA because they serve as "a member of the elected official's personal staff," "serve the elected official on the policymaking level," or serve as a legal advisor to an elected official to bring claims of employment discrimination based on race, sex, religion, age, and disability against their employers. *Id.* §§ 1202, 1220. The Act requires that a claimant file his complaint with the EEOC, which reviews the complaint and issues a final order that can only be set aside by a reviewing court if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; not made consistent with required procedures; or unsupported by substantial evidence." *Id.* § 1220.

The ADA was enacted in 1990. The Government Employee Rights Act was enacted in 1991. When the Government Employee Rights Act was drafted, the provisions of the ADA were available to the legislature and the passage of the ADA was still a fresh memory. It is simply inconceivable that Congress would have drafted this act to establish a limited administrative review process to expand the coverage of employment discrimination laws to employees with politically sensitive positions in state and local government if such employees could bring a private suit under Title II of the ADA against their employer at any time. It also strains credulity that Congress would have deliberately enacted the Government Employee Rights Act's provisions on disability discrimination as a distinct but equally viable alternative for a sensitive political appointee to seek relief from unlawful disability discrimination. What possible purpose does the Government Employee Rights Act serve if the Department of Justice's regulations are to be believed?

The Court also notes that recently the Fifth Circuit reaffirmed the importance of the precisely drawn, detailed administrative scheme that Congress has established for employment discrimination claims by holding that a university professor who claimed sexual discrimination could not use Title IX of the 1972 Education Amendments Act to by pass the administrative remedies of Title VII before seeking judicial relief. *Lakoski v. James,* 66 F.3d 751, 755 (5th Cir.1995).

The Court is unpersuaded by Magistrate Crone's opinion in *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297 (S.D.Tex.1996), that government employees may bring disability discrimination suits without filing a charge of discrimination. *Wagner* states that "[a]lthough it is not apparent from the plain language of § 12132, the regulations issued by the Department of Justice make it clear that the prohibition against discrimination by public entities includes employment discrimination." *Id.* at 1309. The opinion, however, does not review the Department of Justice's construction of the ADA, as directed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

## IV. First Amendment Claim.

 The Plaintiff's First Amendment claim fails because it is barred by the statute of limitations. The applicable statute of limi-

tation for the alleged violation of Decker's constitutional right to free speech is two years. *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir.1987). Decker stated in his deposition that he believed that he had a cause of action for being retaliated against for having spoken out about the paper courses after March 20, 1986. (Decker Dep. at 180–81). Upon the expiration of two years following his awareness of the retaliation, he forfeited his right to bring this cause of action.

## V. Plaintiff's Whistleblower Claim.

■ A plaintiff who seeks relief under the Texas Whistleblower Act "must sue not later than the 90th day after the date on which the alleged violation of [the Act]: (1) occurred; or (2) was discovered by the employee through reasonable diligence." Tex.Gov. Code Ann. § 554.005 (West 1994). Decker reported the alleged violation of law, the paper courses, to the State Auditor's office in the summer of 1993. (Decker Dep. at 169). He testified that he first became aware that he was being retaliated against because of this report in January, 1994. *Id.* at 170–71. Decker has forfeited his right to seek relief under the Texas Whistleblower Act by waiting almost two and a half years to file this lawsuit.

## VI. Intentional Infliction of Emotional Distress Claim.

■ A cause of action for the intentional infliction of emotional distress does not lie for employment disputes. *MacArthur v. University of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 898 (5th Cir.1995); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33 (5th Cir.1992). To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that (1) "the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989) (applying Texas law) (citations omitted). See also *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). Conduct is "outrageous" if it surpasses "all

bounds of decency" such that it is "utterly intolerable in a civilized community." *Id.* (quoting *Restatement (Second) of Torts* § 46, cmt. d (1965)). Mere insults, indignities, threats, annoyances, or petty oppressions do not constitute outrageous conduct. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991).

The Plaintiff has failed to present any competent summary judgment evidence that the injury he suffered was extreme and outrageous.

## VII. Defamation Claim.

■ The Plaintiff claims that Defendant Olivares defamed him in a written memorandum prepared on June 20, 1995 and published to Drs. Pipkin and Giacchetti. Dr. Olivares asserts a defense of qualified privilege to this defamation claim because the memo contained comments about an employee by his employer and was made to a person having an interest in the communication. To defeat a claim of qualified privilege a plaintiff must show that the defendant acted with actual malice, or a knowledge that the statement was false or a reckless disregard for the truth of the statement. *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex.1989). The Plaintiff's claim fails because he has not presented the Court with summary judgment evidence of concrete facts that would show that Olivares had serious doubts about the truth of his memo.

## VIII. Due Process Claim.

■ Decker claims that three actions violated his right to due process: 1) being assigned to teach back-to-back courses; 2) receiving a memo from Defendant Olivares; and 3) receiving a low merit rating. (Decker Dep. at 32). None of these alleged deprivations, however, rise to the level of a constitutionally protected property interest.

Accordingly, the Court

ORDERS that the Defendants' Motion for Summary Judgment (Instrument No. 21) is GRANTED.