Theresa DUELLO, Plaintiff-Appellant-Cross-Respondent,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 97–2608. Submitted on briefs March 9, 1998.—Decided June 11, 1998.*

(Also reported in 583 N.W.2d 863.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *David J. Pliner* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison and *Robert J. Kasieta* of *Kasieta Legal Group* of Madison.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, *David C. Rice*, assistant attorney general, and *Monica Burkert-Brist*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

ROGGENSACK, J. Theresa Duello appeals an order and a judgment which dismissed her employment discrimination claim asserted under Title IX and that part of the judgment on her successful Equal Pay Act claim which partially reduced her request for statutory costs and attorney fees. Her employer, the Board of Regents of the University of Wisconsin System, cross-appeals the denial of its own motion for costs and to limit Duello's costs under the offer-of-judgment statute. Because we conclude that Title VII offers the exclusive federal private remedy for victims of employment-related gender discrimination, we affirm the dismissal of the Title IX claim. We also affirm the award of attorney fees as a proper exercise of discretion, and conclude that the circuit court properly awarded costs to Duello.

## BACKGROUND

The Board first employed Dr. Theresa Duello as an assistant professor at the University of Wisconsin Medical School in 1982. She worked in the anatomy department until 1989, and then transferred to the obstetrics and gynecology department, where she became tenured as an associate professor in 1994. Her duties have included research, teaching, and other services to the medical school.

On December 20, 1994, Duello sued the Board seeking compensatory damages for employment discrimination under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. The Board moved for summary judgment on the grounds that Title IX did not provide a private right of action for employment discrimination. The circuit court granted summary judgment on the Title IX claim, but allowed Duello to amend her complaint to include a claim under the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d) and 216, and 28 U.S.C. § 1343(4).

In her amended complaint, filed December 14, 1995, Duello alleged that a pattern of gender discrimination in the medical school's salary structure had existed throughout her employment, such that she was compensated less than comparably qualified and experienced males in the medical school performing substantially similar duties, despite a gender equity adjustment which was made to her salary in 1993. On December 11, 1996, the Board made an offer of judgment, pursuant to § 807.01, STATS., which included a one-time prospective salary increase of $10,000, a lump sum damages award of $80,000, and reasonable attorney fees, but Duello declined the offer.

The case proceeded to trial, where a jury determined that the Board had willfully violated the Equal Pay Act by paying Duello less than comparable male employees. On July 17, 1997, after postverdict motions, the circuit court awarded Duello $43,391.00 in back pay and another $43,391.00 in liquidated damages, ordered the Board to increase Duello's gross annual salary to $67,200.00 (an annual raise of $5,284.00), and awarded Duello $143,769.54 in attorney fees and $13,307.30 in costs. The circuit court denied the Board's motion for costs which it had incurred subse-

quent to its offer of judgment, but reduced Duello's requested attorney fees by $16,316.17 for insufficient itemization.[1] Duello appeals the dismissal of her Title IX claim and the reduction of her attorney fees, and the Board cross-appeals the denial of its motion for costs.

## DISCUSSION

### Standard of Review.

 Whether Title IX affords a private right of action to alleged victims of gender discrimination in the course of their employment is a question of law appropriate for decision on summary judgment. *See Board of Regents v. Personnel Comm'n,* 103 Wis. 2d 545, 551, 309 N.W.2d 366, 369 (Ct. App. 1981). This court applies the same summary judgment methodology as that employed by the circuit court. *State v. Dunn,* 213 Wis. 2d 363, 368, 570 N.W.2d 614, 616 (Ct. App. 1997); § 802.08, STATS.

> We first examine the complaint to determine whether it states a claim, and then review the answer to determine whether it presents a material issue of fact or law. If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial.

*Dunn,* 213 Wis. 2d at 368, 570 N.W.2d at 616–617 (citations omitted).

---

[1] The court also reduced the request in four other respects, which are not at issue on appeal.

The amount of attorney fees which are reasonable and therefore should be awarded to a successful Equal Pay Act claimant is a discretionary determination. *See Standard Theatres v. Transportation Dep't,* 118 Wis. 2d 730, 747, 349 N.W.2d 661, 671 (1984). Therefore, we will not disturb an award so long as the circuit court reasonably applied the proper legal standard to the facts of record. *Id.*

██

The valuation of future earnings is essentially a factual question which must be proved. *See Wingad v. John Deere & Co.,* 187 Wis. 2d 441, 523 N.W.2d 274 (Ct. App. 1994). We will not reverse a factual finding of the circuit court unless it is clearly erroneous. Section 805.17(2), STATS.; *Hur v. Holler,* 206 Wis. 2d 335, 342, 557 N.W.2d 429, 432 (Ct. App. 1996).

## Title IX Claim.

Duello maintains that a private right of action under Title IX may be implied for her claim of gender-based employment discrimination by a public university. The issue she presents is one of first impression for this court. Section 901 of Title IX of the Education Amendments Act of 1972, as amended, provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). Under 20 U.S.C. § 1682, federal financial assistance may be terminated by the agency for an educational program or activity which violates this mandate, but the parties agree that Title IX does

not expressly provide any private right of action for damages claimed by persons who allege discrimination in violation of § 1681(a).

The United States Supreme Court has established a four-part test to determine whether a private right of action may be implied in a federal statute:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78 (1975) (citations omitted).

In a claim brought under Title IX, the United States Supreme Court has determined that, by focusing on the persons who may be subject to discrimination, the statutory language of 20 U.S.C. § 1681(a) "explicitly confers a benefit on persons discriminated against on the basis of sex." *Cannon v. University of Chicago*, 441 U.S. 677, 694 (1979). The Court held in *Cannon* that a woman who alleged she had been denied admission to certain medical schools on the basis of gender was entitled to pursue a private cause of action against those schools under Title IX. The Court has also established that the "persons" protected by Title IX include employees as well as students. *See North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520 (1982) (holding that Title IX authorized

the Department of Health, Education and Welfare to issue, and to enforce through the withholding of funding, regulations which prohibited federally funded education programs from discriminating on the basis of gender with respect to employment). The Court in *North Haven* also noted that "a female employee who works in a federally funded education program is 'subjected to discrimination under' that program if she is paid a lower salary for like work, given less opportunity for promotion, or forced to work under more adverse conditions than are her male colleagues." *Id.* at 521. Because Duello is a member of a protected class under Title IX, with a right not to be discriminated against by an educational employer receiving federal program funds,[2] we conclude that she has satisfied the first *Cort* factor. With regard to the fourth factor, the Court also observed that protecting citizens "against invidious discrimination" has long been a subject in which the federal government and courts have taken an interest. *Cannon*, 441 U.S. at 708–09 (citations omitted). Therefore, the fourth factor favors permitting Duello's claim to stand, as well.

However, the second and the third *Cort* factors are problematic for Duello. Relevant to the second factor, Duello, quoting *Cannon*, 441 U.S. at 703, argues that the United States Supreme Court has determined that "Congress intended to create Title IX remedies comparable to those available under Title VI and that it understood Title VI as authorizing an implied private

---

[2] We do not today decide the factual question whether Duello did in fact work in an educational program receiving federal assistance; we merely assume so for the purposes of the summary judgment motion. *See North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 540 (1982).

cause of action for victims of the prohibited discrimination." However, *Cannon* arises in a non-employment context; and therefore, it is not precedent for imparting a private right of action for discriminatory conduct in employment, a setting where Title VII is available. Indeed, *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, et al.*, 453 U.S. 1, 20 (1981), requires an examination of the potential remedial devices available when private rights of action appear under two statutes, to determine whether one of the statutes is sufficiently comprehensive to demonstrate congressional intent for a statutory scheme which preempts the field. This directive requires us to consider the second factor of *Cort* in light of the third factor.

Under the third *Cort* factor, we recognize that the dual objectives of Title IX are "to avoid the use of federal resources to support discriminatory practices," and "to provide individual citizens effective protection against those practices." *Cannon*, 441 U.S. at 704. The federal government's ability to withhold educational funding based on the Board's alleged discriminatory treatment of Duello fulfills the first objective. *Id.* In *Cannon*, the Court acknowledged that, due to its severity, § 1682's termination of funding might not be "an appropriate means of accomplishing the second purpose if merely an isolated violation has occurred." Therefore, an award of individual relief could be necessary in some cases to effect the orderly enforcement of the statute. *Id.* at 705. However, in *Storey v. Board of Regents of the University Wisconsin System*, 604 F.Supp. 1200, 1205 (W.D. Wis. 1985), a federal district court distinguished Title IX claims made in an employment context from those in a non-employment context,

such as *Cannon*, because plaintiffs in non-employment contexts generally "had no recourse to a remedial statutory scheme such as Title VII." The court in *Storey* reasoned that the existence of Title VII remedies was sufficient to fulfill the second purpose of the act, and thus undercut any need to imply a private right of action for monetary or injunctive relief under Title IX in an employment context. Similarly, the Fifth Circuit recently concluded that recognizing an implied right of action for damages under Title IX in an employment context "would disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers." *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995). The court in *Lakoski* had rejected the Title IX claim of a professor who had allegedly been denied tenure by a medical school on the basis of her gender. Because it was unconvinced that Congress had intended Title IX to bypass the more specific remedial provisions of Title VII, it held that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Id.* at 753.

In *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir. 1996), the Seventh Circuit reviewed the interface of Title IX with Title VII when employment-based discrimination was alleged to have occurred in an educational setting. Waid's claim was filed prior to the amendments to Title VII by the Civil Rights Act of 1991. Therefore, compensatory and punitive damages had not yet been added to the equitable remedies initially available under Title VII. *Waid* affirmed the *Sea Clammers* doctrine that when parallel private rights of action appear to be available under two statutes, courts must examine the statutory schemes to determine whether one is so comprehensive that it evinces con-

gressional intent to preempt the field. It concluded that as between Title VII and Title IX, in an employment based context, Title VII preempted private rights of action under Title IX to the extent that the remedies available under Title VII were co-extensive with those available under Title IX.[3] *Waid*, 91 F.3d at 862.

We conclude we must follow the direction established by *Sea Clammers* and that we also should adopt the reasoning of *Waid*, *Storey* and *Lakoski*. Title VII is a comprehensive statutory scheme for protecting the right to be free of sex-based discrimination in the workplace, and it expresses congressional intent that Title VII is the exclusive private remedy for sex-based discrimination in employment.[4] This conclusion is consistent with *Cannon* which holds "a private remedy

---

[3] The court's analysis permitted the portions of Waid's claim seeking compensatory and punitive damages to survive because the Civil Rights Act of 1991 was not applicable there. However, Duello had broader remedies available to her than Waid did because the Civil Rights Act of 1991 pre-dated the discriminatory conduct she complained of and therefore, it applied to her claim.

[4] We are unpersuaded by the reasoning of *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F.Supp. 166 (S.D. N.Y. 1993). *Henschke* does not recognize why discrimination in the workplace must be analyzed in light of *Cort v. Ash*, 422 U.S. 66 (1975) and *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, et al.*, 453 U.S. 1 (1981). Instead, it engrafts the private right of action from *Cannon v. University of Chicago*, 441 U.S. 677 (1979) (which is not based on an employment discrimination claim) onto an employment-based claim. It does not recognize the problem created by its reasoning in this regard, and instead it bolsters its holding with *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992), another discrimination claim in a non-employment context. Its failure to

should not be implied if it would frustrate the underlying purpose of the legislative scheme." *Cannon*, 441 U.S. at 703. Allowing an employment discrimination plaintiff to bypass the Title VII procedures with a Title IX action would frustrate a carefully balanced scheme. Therefore, because both the second and the third *Cort* factors weigh heavily against Duello, we conclude there is not an implied private right of action under Title IX for sex-based discrimination in an employment context. The circuit court properly dismissed Duello's Title IX claim.

## Duello's Attorney Fees.

Duello asserts that as the prevailing party she is entitled to reasonable attorney fees. The Fair Labor Standards Act, which applies to Equal Pay Act claims, includes a fee shifting provision which requires that reasonable attorney fees and costs be awarded to a prevailing plaintiff in an employment rights suit. However, it leaves the determination of what amount is reasonable to the circuit court. 29 U.S.C. § 216(b).

Duello originally sought an award of $184,461.65 in attorney fees.[5] The Board challenged $48,957.50 of the amount Duello claimed, contending they were not sufficiently itemized. It directed the court's attention to *Soler v. G & U, Inc.*, 801 F.Supp. 1056, 1061 (S.D. N.Y. 1992), which held that commingled entries could be excluded from an attorney fees award, since they impeded a circuit court's ability to evaluate the reasonableness of time spent on individual activities. The

follow *Sea Clammers* and *Cort* led it to a decision which we conclude should not be reached here.

[5] Costs were handled separately, and are only at issue in the cross-appeal.

court agreed, but gave Duello the opportunity to supplement its fee request with contemporaneous records breaking down the charges. In response, Duello submitted a letter which approximated the actual time spent on each activity. The court then reduced the requested award by one-third of the challenged amount, or $16,316.17, finding that counsel's "best approximation" was not a sufficient assurance of the necessity of some of the charges.

Duello contends on appeal that she was statutorily entitled to all of her attorney fees. However, the statute entitles Duello only to *reasonable* fees. 29 U.S.C. § 216(b). Thus, the reasonableness of fees must be demonstrated to the circuit court's satisfaction, and it may require whatever documentation or itemization that is necessary to complete its evaluation. After examining the circuit court's reasoning, we conclude that its reduction of Duello's attorney fees, based on its finding that insufficient proof had been submitted to document all of the charges and therefore sustain their reasonableness, was an appropriate exercise of its discretion.

## Board's Costs.

The Board argues that, because it made Duello an offer of judgment under § 807.01, STATS.,[6] which was

---

[6] Wisconsin's offer of judgment statute, § 807.01, STATS., provides in relevant part:

> **Settlement offers. (1)** After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. . . . If the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not

568

more favorable than the ultimate judgment she received, the Board was entitled to recover the costs it incurred after the date on which its offer was made, and that it should not have had to pay any of Duello's costs incurred after that date. Duello disputes first, whether § 807.01 applies to a federal Equal Pay Act claim brought in state court, and second, whether the valuation of the settlement offer was actually more favorable than that of the judgment. The Board responds that, even if § 807.01 is not applicable, the same result would occur under the parallel federal rule.

The threshold issue is whether § 807.01(1), STATS., is procedural or substantive in nature. This distinction is significant because "a state may impose procedural requirements on litigants choosing a state forum for adjudication of their federal civil rights claims," so long as the federal rights implicated are not "defeated by the forms of local practice." *Felder v. Casey*, 139 Wis. 2d 614, 627, 408 N.W.2d 19, 25 (1987), *point affirmed in* 487 U.S. 131, 138 (1988) (citation omitted).

Federal courts examining similar issues in diversity actions show mixed results. For instance, the federal district courts in *Datapoint Corp. v. M & I Bank of Hilldale*, 665 F.Supp. 722 (W.D. Wis. 1987), *Klawes v. Firestone Tire & Rubber Co.*, 572 F.Supp. 116 (E.D. Wis. 1983), and *Hutchinson v. Burning Hills Steel Co.*, 559 F.Supp. 553 (E.D. Wis. 1983) all treated the prejudgment interest provision of § 807.01(4), STATS., as a procedural rule. Conversely, in *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305 (7th Cir. 1995), the Seventh Circuit determined that the plain-

recover costs but defendant shall recover costs to be computed on the demand of the complaint.

tiff's offer of judgment pursuant to § 807.01(3), which has no counterpart in the Federal Rules of Civil Procedure, was substantive in nature because it could dictate outcomes in cases and thus cause forum shopping. However, in its discussion, the Seventh Circuit specifically distinguished the defendant's offer of judgment provision under para. (1) from the plaintiff's offer under para. (3), noting that Rule 68 was substantially identical to para. (1), aside from the number of days prior to trial by which an offer was required to be made, thereby implying that the statutory provision relative to a defendant's offer of judgment would not cause forum shopping and therefore, it was procedural.

Because the similarity of Rule 68 to § 807.01(1), STATS., makes the likelihood of forum shopping based on the latter provision extremely remote, and because § 807.01(1) does no more than sanction a litigant for the failure to accept a reasonable settlement offer during the course of a lawsuit, we conclude that it is procedural in nature. Therefore, it is appropriate for Wisconsin courts to apply § 807.01(1) to federal claims brought in state court, unless its application would defeat a substantive federal right.

Duello contends that the application of § 807.01(1), STATS., in this case would defeat her substantive federal right to recover costs as a prevailing plaintiff under the Fair Labor Standards Act, 29 U.S.C. § 216(b). We disagree. The United States Supreme Court rejected a similar argument when it concluded that Rule 68 could properly be used to deny attorney fees to a plaintiff who prevailed in a § 1983 action, but failed to recover more than a settlement offer. As the court explained:

> Merely subjecting civil rights plaintiffs to the settlement provision of Rule 68 does not curtail their access to the courts, or significantly deter them from bringing suit. . . . Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits. . . . [S]ince the Rule is neutral, many civil rights plaintiffs will benefit from the offers of settlement encouraged by Rule 68. Some plaintiffs will receive compensation in settlement where, on trial, they might not have recovered, or would have recovered less than what was offered. And, even for those who would prevail at trial, settlement will provide them with compensation at an earlier date without the burdens, stress, and time of litigation.

*Marek v. Chesny*, 473 U.S. 1, 10 (1985). Wisconsin's offer of judgment statute is neutral as well. Therefore, we conclude that it does not operate to defeat the plaintiff's federal claims, or the policy underlying fee shifting in civil rights actions, and that it is a state procedural statute which is appropriate to apply when federal claims are brought in state court.

However, our conclusion that § 807.01(1), STATS., is available to the Board does not necessarily mean that the Board is entitled to costs under the facts of this case. Although the $10,000-a-year salary increase tendered in the settlement offer was more favorable than the $5,284 increase which the jury awarded, Duello's past damages award was more favorable to her than that in the Board's settlement offer. The Board first argues that a defendant who has made an offer of judgment ought to be entitled to costs if any single component of the judgment is less that the settlement offered. We reject this notion both because it has no basis in the language of the statute, and because it

571

could be easily manipulated to pressure a plaintiff to accept an offer whose overall value was inadequate by loading the bulk of the offer into one component.

The Board next argues that this court should value the salary increase based on a projected retirement age of sixty-five, and add that value to the past damage offer. However, the circuit court correctly identified two problems with that proposal. First, there was no evidentiary basis for assuming that Duello intended to spend the rest of her career working at the University of Wisconsin. In fact, as even the defense noted in its argument to the court, the award would have no value at all if Duello were to leave the University immediately upon the resolution of the case. Second, there were evidentiary gaps relating to the method used by the defense expert to calculate the present value of the salary award, such as the bases for his assumptions of a 5.3 % wage increase and a 6% discount rate. In light of these factual problems, we do not think that the circuit court's valuation of the salary increase at one year's face value was clearly erroneous, and we will not disturb it.

## CONCLUSION

Duello's Title IX claim was properly dismissed because Title IX does not afford a private right of action to one who alleges employment discrimination based on gender in an educational setting. Additionally, the circuit court's awards of attorney fees and costs were both proper.

*By the Court.*—Judgment and order affirmed.