947 F.2d 1021
 57 Fair Empl.Prac.Cas. (BNA) 275,
57 Empl. Prac. Dec. P 41,063, 70 Ed. Law Rep. 1068
 Morris SILVER, Plaintiff-Appellant,
v.
The CITY UNIVERSITY OF NEW YORK; The Board of Trustees of
the City University of New York; Bernard W.
Harleston; Joseph S. Murphy and James
P. Murphy, Defendants-Appellees.
 No. 288, Docket 91-7594.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 22, 1991.
Decided Oct. 23, 1991.
 
 Morris Silver, Woodbury, N.Y., pro se.
 Clement J. Colucci, Asst. Atty. Gen. of State of N.Y., New York City (Robert Abrams, Atty. Gen. of State of N.Y., of counsel), for defendants-appellees.
 Before TIMBERS, WINTER and WALKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Professor Morris Silver appeals from the dismissal of his complaint by Judge Duffy. Appellant, a professor at the City University of New York (hereinafter "CUNY"), alleges that he was denied an appointment as a Distinguished Professor because of his race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and 42 U.S.C. § 1983 (hereinafter "section 1983"). 767 F.Supp. 494. Because he has provided insufficient evidence of discriminatory intent or purpose, we affirm.
 
 
 2
 Summary judgment is proper when, viewed in the light most favorable to the nonmoving party, the record reveals "no genuine issue as to any material fact" and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); Stroup v. GCS Service, Inc., 938 F.2d 20, 22 (2d Cir.1991). Summary judgment is thus warranted when the nonmoving party has no evidentiary support for an essential element on which it bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 3
 Professor Silver alleges disparate treatment under Title VII and thus must demonstrate that the failure to accord him a Distinguished Professorship was based on a discriminatory motive. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The principal evidence of such a motive is an internal CUNY memorandum stating that lists of candidates for Distinguished Professor "should include a very significant representation of minorities and females." However, the memorandum in no way suggests that the appointment of Distinguished Professors should, or would, be race- or gender-based. It merely indicated that those considered for such an appointment would include scholars who were members of minority groups or were female.
 
 
 4
 Nor did the circumstances of the denial of his appointment provide evidence of discrimination. A Distinguished Professorship is not a routine achievement on CUNY's professional track, and there is thus no basis to find that the denial was a departure from a recognized norm. The fact that the denial of such a position to Silver was accompanied by the posthumous appointment of a black female scholar adds nothing of probative value because the latter appointment was entirely honorary. The denial was also accompanied by the appointment of a male black scholar to a Distinguished Professorship (later converted to a Visiting Distinguished Professorship). However, there were well over thirty such Professorships available, and this single appointment cannot sustain an inference of discriminatory intent with regard to Professor Silver. Finally, Professor Silver's statistical data indicating an increasing number of minority and female Distinguished Professors is fatally flawed because it does not take into account changes in the relevant pool of qualified scholars during the same period of time. See Coser v. Moore, 739 F.2d 746 (2d Cir.1984) (statistical disparities regarding race or gender not probative where no evidence of relevant pool of qualified scholars).
 
 
 5
 A valid section 1983 claim exists where a person acting under color of state law deprives a plaintiff of "rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983. However, there is no genuine issue of fact as to whether Silver was deprived of his rights to equal protection. "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). Silver's section 1983 claims fails, therefore, for the reasons stated with regard to his Title VII claim.
 
 
 6
 Affirmed.