Cherie **BURRELL,** Plaintiff,

v.

**CITY UNIVERSITY OF NEW YORK**
**and Dr. Stanford A. Roman, Jr.,**
**Defendants.**

**No. 94 CIV. 8711(RWS).**

United States District Court,
S.D. New York.

Feb. 26, 1998.

Dickerson & Reilly (Bradford D. Conover, Timothy C. Quinn, of Counsel), New York, NY, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (Michael S. Popkin, Assistant Attorney General, of Counsel), New York, NY, for Defendant.

## OPINION

SWEET, District Judge.

In this sexual discrimination action, defendants City University of New York ("CUNY") and Dr. Stanford A. Roman, Jr., M.D. ("Roman") (collectively, "Defendants") move, pursuant to Fed.R.Civ.P. 56 and Fed. R. Civ. 12(c) for dismissal of all counts in the third amended complaint ("Third Amended Complaint") of plaintiff Cherie Burrell ("Burrell"). For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

### Parties

Burrell was born in Barbados and, at all times relevant to this action, was a resident of Laurelton, New York.

CUNY is a public higher education system comprised of several senior and community colleges throughout New York City and its boroughs, including CUNY Medical School/Sophie Davis School of Biomedical Education ("Sophie Davis").

Roman is the Dean of Sophie Davis.

### Prior Proceedings

Burrell filed her first complaint in this action on December 2, 1994. The complaint alleged that Roman subjected Burrell to various acts of sexual harassment from the outset of her employment at CUNY in January 1992, through May 15, 1992; that Roman unilaterally transferred Burrell and asked her to resign in early June 1992; and that on August 31, 1992, Burrell's employment was terminated in retaliation for her complaining of sexual harassment to the CUNY Affirmative Action Office.

Defendants moved for summary judgment, and, in an opinion issued on August 17, 1995, summary judgment was granted in part. *Burrell v. City University of New York*, 894 F.Supp. 750 (S.D.N.Y.1995) (*"Burrell I"*). Specifically, Burrell's claim of sexual harassment, asserted under Title VII of the Civil Rights Act of 1964, was dismissed as time-barred, because Burrell had not filed a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last alleged act of harassment. *Id.* at 759. Burrell's claim for retaliation survived. *Id.* at 761.

On April 25, 1995, Defendants moved for dismissal, pursuant to Fed.R.Civ.P. 37(d). The motion was denied. *Burrell v. City University of New York*, No. 94 Civ. 8711, 1996 WL 494897 (S.D.N.Y. Aug.30, 1996).

On November 18, 1997, Burrell filed a second amended complaint, which asserted federal law claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* ("Title VII"), Title IX, 20 U.S.C. § 1681 *et seq.,* ("Title IX"), 42 U.S.C. § 1983, (" § 1983"), 42 U.S.C. §§ 1985(3) (" § 1985(3)") and 1986, and the Employee Retirement Income Security Act of 1994, 29 U.S.C. § 1001 *et seq.,* ("ERISA"), as well as state law claims under New York State's Human Rights Law, N.Y. Exec. Law, § 296 *et seq.,* (the "Executive Law"), and under New York City's Human Rights Law, Administrative Code § 8–502, (the "Administrative Code"). Burrell also asserts state law claims for intentional infliction of emotional distress, ("IIED"), defamation and slander, and breach of contract.

On December 4, 1997, Defendants brought the instant motion for summary judgment and dismissal on the pleadings. Oral argument was held on December 31, 1997, at which time the Court granted leave from the bench to amend again the complaint (the "Third Amended Complaint").[1] The motion was then deemed fully submitted.

### Facts

The facts of this case are fully set forth in *Burrell I,* 894 F.Supp. at 752–57, familiarity with which is assumed. Only information relevant to the disposition of the instant motion will be set forth herein.

Burrell was hired by Roman as Assistant to the Dean for the period from January 21, 1992 through June 30, 1992. During her interview for the position, Burrell told Roman that she held an "H–1" visa authorizing her to work for her former employer.[2] Roman responded that he would take care of any paperwork necessary to transfer Burrell's visa, and that she could begin working while the paperwork for her visa transfer was being processed. After Burrell began work, Roman told her that he had spoken about the transfer of her visa to Eleanor Chin ("Chin"), the Acting Director of Administrative Affairs at Sophie Davis. Roman assured Burrell that Chin would process all paperwork necessary to transfer sponsorship of Burrell's visa.

According to Burrell, over the next year Roman made several comments regarding his attraction to Burrell, asked her to dinner, called her at home, sent her expensive gifts and arranged work meetings with her at 4:50 pm which lasted until long after the other employees had gone home for the day. Burrell consistently made it clear to Roman that she was not interested in a relationship with him, refused his invitations to dinner, and attempted to return his gifts.

On April 24, 1992, approximately two months before Burrell's contract was due to expire, Roman offered her a one year renewal contract, which Burrell signed on May 1, 1992. Shortly after Burrell signed the renewal contract, Roman became openly critical of her work. Two weeks after Burrell signed the renewal contract, Roman gave Burrell a written memorandum criticizing her.

On May 18, 1992, Burrell went to CUNY's Affirmative Action Office to complain about her experiences with Roman. She was interviewed by Dean Manuel de la Nuez ("de la Nuez") and Gloria Medonne ("Medonne"), the Director and Assistant Director, respectively, of the Affirmative Action Office. Medonne advised Burrell to submit her complaint in writing and to retain an attorney. Medonne also told Burrell that the Affirmative Action Office would conduct an interview with Roman regarding Burrell's complaint. Several days after complaining to the Affir-

---

1. The Third Amended Complaint asserts claims almost identical to those of the second amended complaint, differing only in that the Executive Law is pled against Roman only, the §§ 1983, 1985, and 1986 claims are pled against Roman in his official and individual capacities. At oral argument, Defendants consented to applying their motion for summary judgment and dismissal to the Third Amended Complaint.

2. An "H–1" visa is granted by the INS, upon petition by a prospective employer, to non-immigrants who are to be brought into the United States by the prospective employer to perform, *inter alia,* "specialty occupations," as that term is defined in § 214(i)(1) if the Immigration and Naturalization Act, codified at 8 U .S.C. § 1184. The employee may not use the visa to work for other employers. 8 C.F.R. § 214.2(h)(2)(i)(D). If an employee seeks additional employment after working for the authorized employer, the new employer must petition the INS to sponsor a transfer of the employee's visa.

mative Action Office, Roman told Burrell he heard she had visited the building in which the Affirmative Action Office is located and that he "would not let [her] be destructive."

On May 29, 1992, Roman was interviewed by de la Nuez and Medonne. Medonne's notes of the interview indicate that Roman was asked if he knew why Burrell had made a complaint against him. Roman stated that Burrell's work performance was unacceptable and that his staff had told him she was incompetent. Medonne asked Roman, if that were true, why he had given her such a glowing evaluation and renewed her contract for one year. Roman replied he had been unaware of Burrell's problems at the time he renewed her contract. Roman denied all of Burrell's allegations and told Medonne he had no intention of keeping Burrell in her position any longer. Medonne advised Roman not to fire Burrell and stressed that there could be no retaliation against her for filing a complaint. Roman agreed to look into transferring Burrell to another department while the Affirmative Action Office investigated her complaint.

During the period after the interviews in the Affirmative Action Office, Roman told Burrell he hadn't realized how dangerous she could be, but said he would "take care of it." Other employees informed Burrell that her desk had been searched in her absence. The access code for Burrell's private voice mail had been changed and the files on her computer had been erased. Roman gave Burrell several memoranda criticizing her performance. Burrell alleges that, on several occasions, Roman and Chin removed office files and subsequently blamed Burrell for misplacing them.

On June 2, 1992, Roman gave Burrell a memorandum transferring her, effective June 3, to an administrative position in CUNY's Learning Resources Center. Burrell was aware that the position was created specifically for her, outside of the established guidelines for job creation at CUNY and had no line of funding. Burrell believed that she had been unofficially terminated and demoted. The new position required skills different from Burrell's training and background and her previous position.

Burrell alleges that she suffered many incidents of ongoing harassment in the new position: her new supervisor noted her whereabouts to the extent of following her to the bathroom; her job description was changed four times during the period she worked at the Learning Resources Center; she was given work to do which required skills she did not have; her time sheet was docked by Roman; she was locked out of the Learning Resource Center on several occasions; and she received a death threat on her telephone, which she reported to the police precinct. She also alleges that Roman accused her of impropriety and immoral conduct with men doing business with the Dean's office. This accusation was written in her personnel file and became part of her work record. Burrell asserts that she reported all of the above incidents to the Affirmative Action Office at CUNY, but no further investigation took place after the initial interviews.

Two weeks after Burrell's transfer, Chin sent a letter dated June 25, 1992 requesting that Burrell provide the personnel department with a copy of her "H–1" petition. Chin noted that Burrell's contract with CUNY had been extended until June 30, 1993, but that CUNY's records indicated that Burrell's eligibility to work would expire on April 17, 1993. Chin sent copies of the letter to Roman, and Stephen Nisbett, ("Nisbett") CUNY's Director of Personnel.

Burrell responded to Chin's request by letter dated July 20, 1992, in which she reminded Chin that Roman had agreed to sponsor the transfer of her "H–1" visa to CUNY, and that Roman had repeatedly assured her that Chin would be responsible for handling the matter. Burrell also noted that the petition for a visa transfer is a document prepared by the sponsoring employer, not the employee, and therefore, that she could not produce the "H–1" petition Chin had requested. Burrell sent copies of the July 20 letter to Roman and Nisbett.

On July 23, 1992, Burrell received a valid work permit from the INS, which superseded any need for a visa petition. She so informed CUNY. On July 31, 1992, Nisbett sent Burrell a letter noting that she had

failed to provide the "H–1" petition to the personnel office, and that Nisbett was making a decision on Burrell's "status for continued employment" and requested that she make an appointment with him to discuss the matter before August 7, 1992.

On August 4, 1992, Roman sent a letter to Nisbett denying that he had ever promised to aid in the application for an "H–1" visa, and commenting, "It would be a travesty for an institution like the City University of New York to have to sponsor an individual to work as an administrative assistant given the availability of qualified legal applicants."

On August 31, 1992, CUNY terminated Burrell. According to Burrell, she was told that her last pay checks were being withheld because she had not returned CUNY property. No indication was given as to what property of CUNY's Burrell was alleged to have in her possession. Burrell received no notification of ERISA/COBRA benefits. Burrell also alleges that her 401(k) plan retirement account was raided without her knowledge or authorization and all funds were removed.

On May 10, 1993, Burrell filed a complaint with the EEOC, alleging that Roman had sexually harassed her, and asserting that her June 2, 1992 transfer and August 31, 1992 termination were in retaliation for filing a complaint with CUNY's Affirmative Action Office.

### Discussion

#### I. *Legal Standards*

##### A. *Rule 56 Standard for Summary Judgment*

The Rule 56 motion for summary judgment is an "integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules stated in Rule 1, namely, to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See,* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir. 1991).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex,* 477 U.S. at 330 n. 2 (Brennan, J. dissenting) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

In addition to the foregoing standards, the Second Circuit has held that additional considerations must be taken into account when deciding whether summary judgment should issue in an employment discrimination action. *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994); *see also Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue. Affidavits and depositions must be scrutinized for circumstantial evidence which, if believed, would show discrimination. *Gallo,* 22 F.3d at 1224.

##### B. *Rule 12(c) Standard for Judgment on the Pleadings*

 Defendants also bring this motion pursuant to Rule 12(c), Fed.R.Civ.P. On a motion for judgment on the pleadings, "the same standards that are employed for dismissing a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) are appli-

cable." *Ad–Hoc Comm. v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987) (citations omitted). In considering the motion, all of plaintiff's "well pleaded factual allegations ... are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1368, at 520 (2d ed.1990); *see e.g., Fine v. City of New York,* 529 F.2d 70, 75 (2d Cir.1975). A court may not dismiss a complaint on the pleadings unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining the sufficiency of the complaint, consideration is limited to the factual allegations it contains. *See Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994).

### Summary Judgment Will Not Be Granted As To Burrell's Retaliation Claim

■ Defendants assert that Burrell's claim for retaliation, pursuant to Title VII, should be dismissed because no issue of fact exists as to CUNY's motives in terminating Burrell. According to Defendants, this action is a "mixed motives" case, i.e., both a permissible and an impermissible motive can be shown to play a part in an employment decision, and the employer may still prevail upon demonstrating that "it would have taken the same action without consideration of the impermissible factor." *Hargett v. National Westminster Bank, USA,* 78 F.3d 836, 840 (2d Cir. 1996) (quoting *Ostrowski v. Atlantic Mut. Ins. Co.,* 968 F.2d 171, 182 (2d Cir.1992)); *see also, Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775; 104 L.Ed.2d 268 (1989). According to Defendants, CUNY would have taken the same action to terminate Burrell whether or not she had complained to the Affirmative Action Office, because CUNY had a legal obligation to insist that she verify her documentation, and she failed to come into the personnel office to do so.

In *Burrell I,* the Court found that an issue of fact prevented the dismissal of Burrell's retaliation claim, on the grounds that it is unlikely Burrell would have been terminated without the Chin's letter calling attention to Burrell's ineligibility to work at CUNY and Roman's letter asserting that Burrell misrepresented her eligibility to work for CUNY at the time of her second interview with Roman. *Id.* at 761. Application of a mixed motive analysis does not eliminate this issue of fact. Whether or not CUNY holds a duty to obtain verification of employability, a reasonable inference may be drawn that it was action by Roman and Chin that led Nisbett to conclude that Burrell lacked such eligibility. Summary judgment on this claim is therefore unavailable.

### Burrell's Hostile Work Environment Claim Against CUNY Is Dismissed as Untimely

As set forth above, *Burrell I* dismissed the Title VII claim for sexual harassment in the first complaint because it was untimely. *Burrell I,* 894 F.Supp. at 758. In New York, an employee must file an EEOC complaint within 300 days of the events alleged. 42 U.S.C. § 2000e–5(e). Burrell filed her complaint with the EEOC on May 10, 1993, 359 days after the date of the last act of harassment alleged against Roman, and 342 days after her June 2, 1993 transfer to the Learning Resources Center.

■ In her Third Amended Complaint, Burrell has again asserted a claim for sexual harassment "giving rise to a hostile and offensive work environment." The Second Circuit has recognized two distinct theories under which a plaintiff can seek relief for sex discrimination: "quid pro quo" or "hostile work environment". *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 62 (2d Cir.1992). Under the "quid pro quo" theory, the plaintiff must establish that she was denied an economic benefit either because of gender or because she rejected a sexual advance made by a supervisor. *Id.* Under the theory of "hostile work environment", a plaintiff is required to demonstrate (1) actionable sex discrimination and (2) that the supervisor's actions should be imputed to the employer. *Id.* To impute liability to an employer, a plaintiff must demonstrate that

the employer knew about the harassment but did not take effective remedial action. *Id.; Dortz v. City of New York*, 904 F.Supp. 127 (S.D.N.Y.1995). "Ultimately, whether there is a valid [hostile work environment] claim under Title VII depends on the totality of the circumstances." *Kotcher, supra* at 63.

■ It is Burrell's contention that articulating the sexual harassment claim under the "hostile work environment" theory renders the claim timely because proof regarding CUNY's failure to remediate falls within the EEOC limitations period, even if the acts of sexual harassment do not. Moreover, Burrell asserts that events which occurred after her transfer, i.e., the office lockout, docked pay, threatening phone call and changes in her job description, constitute part of the harassment underlying the "hostile work environment" claim and fall within the limitations period.

It is not clear that Burrell's previous articulation of the sexual harassment claim fell so definitively under the theory of "quid pro quo," or that the current articulation now tracks the "hostile work environment" theory. Nonetheless, even if the current claim is characterized under the latter theory, it is still barred as untimely, because the allegations of sexual harassment asserted in the EEOC charge were untimely. The core of the "hostile work environment" claim remains Roman's acts of sexual harassment, which ended on May 15, 1992, more than 300 days before Burrell filed her EEOC claim on May 10, 1993. The fact that CUNY's failure to remediate lasted into the limitations period cannot render the earlier occurrences of sexual harassment timely; CUNY's failure to remediate goes to establish CUNY's liability, not to establish actionable sexual harassment. If a "hostile work environment" claim were rendered timely by an ongoing failure to remediate, even after the sexual harassment had ceased, the theory would become an automatic "continuing violation", even when the last act of harassment occurred before the limitations period. Such is not the law in this Circuit. *See, e.g., Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994) (hostile work environment claim timely under continuing violation exception because latest acts of harassment occurred within limitations period).

Finally, the period of harassment is not extended by the events occurring after Burrell's transfer. The allegations regarding Burrell's treatment during her work at the Learning Resource Center demonstrates retaliation, but not "harassment based upon her sex." *Cosgrove*, 9 F.3d at 1042.

### Burrell's Title VII Claim Against CUNY of Discrimination on the Basis of National Origin Is Dismissed

■ The Third Amended Complaint contains a claim as to CUNY that Burrell was terminated because of her national origin, in violation of Title VII. Defendants assert that this claim is barred as untimely because Burrell failed to raise it in her EEOC charge.

■ A district court only has jurisdiction to hear claims which are either raised in the EEOC charge, or are "reasonably related" to the EEOC charges. *Butts v. City of New York Dept. of Housing*, 990 F.2d 1397, 1402 (2d Cir.1993). The Second Circuit has recognized three different situations where claims not alleged in an EEOC charge are sufficiently related to provide jurisdiction: (1) where the claim brought in the civil action concerns conduct which would fall within the reasonable scope of the EEOC investigation; (2) where the claim alleges retaliation for filing the EEOC charge; and (3) where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Id.*, at 1402–1403.

Courts generally do not find a claim that is based on a wholly different type of discrimination to be reasonably related to those initially asserted in the EEOC charge. *See, Carrasco v. New York City Off–Track Betting Corp.*, 858 F.Supp. 28, 33 (S.D.N.Y.1994) (no jurisdiction over retaliatory harassment claim because plaintiff had specifically alleged that harassment resulted from resentment of co-worker in EEOC charge); *Dennis v. Pan American World Airways, Inc.*, 746 F.Supp. 288, 291 (E.D.N.Y.1990) (age discrimination claim dismissed where plaintiff had alleged racial discrimination and only mentioned having to retire early in initial EEOC charge); *Kawatra v. Medgar Evers College of City Univ. of N.Y.*, 700 F.Supp. 648, 654 (E.D.N.Y.1988) (marital status discrimination claim not reasonably related to

charges of sex and national origin discrimination); *McPartland v. American Broadcasting Companies*, 623 F.Supp. 1334, 1339 (S.D.N.Y.1985) (age discrimination claim dismissed where charge alleged sex discrimination, harassment, retaliation and discriminatory discharge).

Burrell failed to mention any allegation regarding national origin discrimination in her EEOC charge; rather, she detailed the events of sexual harassment perpetrated by Roman, and described her termination as motivated by retaliation for her complaints of the sexual harassment. While Burrell mentioned in the charge that the stated reason for her dismissal was a lack of necessary work authorization, this information is stated only to demonstrate that the reason was pretextual. In short, there is nothing in the charge which would give the EEOC reasonable notice that a claim of national origin discrimination should be investigated.

### *Title IX Claims Against CUNY and Roman Are Dismissed*

▇ Defendants seek to dismiss Burrell's claims brought under Title IX on the grounds that the statute provides no private right of action for employees.

▇ Title IX states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

20 U.S.C. § 1681(a) (West 1997). Courts are divided as to whether Title IX provides a cause of action not only to students who have suffered sex discrimination in federally funded educational programs, but employees of those programs as well. This issue has not been resolved by the Supreme Court nor the Second Circuit.[3] For the reasons set forth below, this Court is persuaded that the remedies of Title IX are limited to student plaintiffs, and Title VII is meant to offer the exclusive remedy for employment discrimination based on sex.

The parameters of Title IX have been partially established by three Supreme Court cases: *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *North Haven Board of Education v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982); and *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Cannon*, the Supreme Court found that Congress had intended a private right of action for a student plaintiff, based on the statutory purpose of "provid[ing] individual citizens effective protection against [discriminatory] practices" at federally funded educational institutions. *Id.* 441 U.S. at 704–9.

*Bell* dealt with the issue of whether the Department of Health, Education and Welfare had authority to regulate a school's employment practices pursuant to Title IX enforcement provisions. *Bell*, 456 U.S. at 540. The Court affirmed the Second Circuit's finding that federal funds could be terminated for discrimination visited upon employees, as well as students, of educational programs. 456 U.S. at 535–36.[4] The Court did not address the availability of a private right of action for employees of such programs.

> [T]he only circuit to have decided the question has concluded that an employee of an educational institution has no private right of action for employment discrimination under Title IX. *See Lakoski v. James*, 66 F.3d 751, 754 (5th Cir.1995). We need not reach that question here, as we conclude below that, even if she does have a private right of action under Title IX, [plaintiff-employee] cannot establish [defendant's] liability.
>
> *Torres*, 116 F.3d at 630 n. 3.

---

**3.** The Second Circuit has glanced at the issue in two opinions. In *Murray v. New York University College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995), the Court noted that "Title IX has been construed to prohibit gender discrimination against both students enrolled in federally supported educational programs and employees involved in such programs." However, this merely comports with the Supreme Court's holding in *Cannon, infra*, that an educational program may be deprived of federal funds for acts of discrimination against either students or employees; it does not necessarily indicate a leaning by the Second Circuit towards permitting a private right of action for employees of educational programs. In *Torres v. Pisano*, 116 F.3d 625 (2d Cir.1997), the Circuit cited the dicta in *Murray*, and also noted that:

**4.** The *Bell* Court based this determination in part on the legislative history of Title IX, specifically, commentary by Senator Birch Bayh in introducing the bill in which he stated:

> [T]he heart of this amendment is a provision banning sex discrimination in educational pro-

Finally, in *Franklin*, the Court held that damages were available for a student-plaintiff filing an action for sexual harassment under Title IX. 503 U.S. at 76.

Courts faced with employee-plaintiffs seeking relief under Title IX have sought to divine from the above three decisions whether such a right of action is available, and have reached opposing results. At least five courts have concluded that the combined holding of the above cases permits a private right of action to employees of federally funded educational institutions. In *Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203 (4th Cir.1994), the Fourth Circuit noted that an implied private right of action had been established by *Cannon*, and then simply concluded that "[t]his implied right extends to employment discrimination on the basis of gender by educational institutions receiving federal funds." *Id.* at 206 (citing *Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299).[5]

Similarly, but with more extensive analysis, the court in *Henschke v. New York Hospital–Cornell Medical Ctr.*, 821 F.Supp. 166 (S.D.N.Y.1993) (Preska, J.), noted the establishment of a private right of action in *Cannon*, the determination that Congress intended Title IX to bar employment discrimination in *Bell*, and determination that damages are available in *Franklin*, and held:

> Reading all of the above together, it is the opinion of this Court that the legislative history of Title IX demonstrates an intent on the part of Congress to have Title IX serve as an additional protection against

gender-based discrimination in educational programs receiving federal funding regardless of the availability of a remedy under Title VII, and the Supreme Court and Second Circuit interpretations of the statute do not permit the contrary conclusion.

*Id.* at 172. *See also, Bedard v. Roger Williams University*, 989 F.Supp. 94, 97 (D.R.I.1997) ("On the strength of these three [Supreme Court] precedents, this court agrees with those courts which predictively view the Supreme Court's 'next logical step' as being to recognize a private cause of action under Title IX for employment discrimination against a federally funded education program.").

At least five other courts have reached the opposite conclusion. In *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir.1995), a faculty member at University of Texas brought an action for sex discrimination under Title IX and § 1983, but not Title VII. The Fifth Circuit held that Title VII stood as the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions. *Id.* at 753. The *Lakoski* Court based its determination on a concern that Title VII's "carefully balanced remediation scheme" should not be bypassed by employees at such institutions. *Id.* at 754. "Critical to our resolution of this case is the fact that, although Dr. Lakoski possessed a colorable claim of employment discrimination in violation of Title VII, she chose not to pursue the remedy made available by Title VII." *Id.* at 753.[6] In *Storey v.*

grams receiving federal funds. The amendment would cover such crucial aspects as admissions procedures, scholarships, and faculty employment with limited exceptions. Enforcement powers include fund termination provisions—and appropriate safeguards—parallel to those found in Title VII of the 1964 Civil Rights Act. Other important provisions in the amendment would extend the equal employment opportunities provisions of Title VII of the 1964 Civil Rights Act to educational institutions ...
456 U.S. at 524 (quoting 118 Cong. Rec. 5803 (1972)).

**5.** Burrell also cites *Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir.1988) as finding a private right of action for employee-plaintiffs, but this case is distinguishable; the *Lipsett* plaintiff

was both a student and an employee of the defendant. *Id.* at 897.

**6.** More recently, in *Lowrey v. Texas A & M University System*, 117 F.3d 242 (5th Cir.1997), the Fifth Circuit was asked to reconsider *Lakoski*. Declining reconsideration on the grounds that a determination made by a circuit panel could only be overruled by the Supreme Court or the Fifth Circuit sitting *en banc*, *id.* at 247, the *Lowrey* Court nonetheless distinguished *Lakoski* from the instant case in which a university employee had brought a claim of retaliatory termination resulting from complaints made about Title IX violations. *Id.* at 249. *See also, Nelson v. University of Maine System*, 923 F.Supp. 275, 278 (D.Me. 1996) (private right of action under Title IX exists for employee who is discharged in retaliation for opposing practices that violate Title IX);

*Bd. of Regents*, 604 F.Supp. 1200, 1205 (W.D.Wis.1985), the plaintiff brought claims of sex discrimination under Title VII and Title IX. The *Storey* Court found that Title IX did not provide a private right of action for employment discrimination plaintiffs because Title VII predated Title IX, and Congress intended Title VII to provide an exclusive avenue of relief except for remedies which were already in existence at its enactment. *Id.* at 1201 (citing prior decision in *Storey v. Bd. of Regents of Univ. of Wis. System*, 600 F.Supp. 838, 842 (W.D.Wis. 1985)).

These two rationales, that Title VII's comprehensive scheme should not be bypassed and that Title VII was meant to preempt subsequent remedies, underlie similar decisions in other courts. *See, i.e., Cooper v. Gustavus Adolphus College*, 957 F.Supp. 191, 193 (D.Minn.1997) ("since Title VII provides a comprehensive and carefully balanced remedial mechanism for redressing employment discrimination, and since Title IX does not clearly imply a private right of action for damages for employment discrimination, none should be created by the courts"); *Howard v. Bd. of Educ. Sycamore Community Unit*, 893 F.Supp. 808, 815 (N.D.Ill.1995) (expressing dual concerns of potential bypass of Title VII requirements and Title VII preemption of Title IX); *Wedding v. University of Toledo*, 862 F.Supp. 201, 203–204 (N.D.Ohio 1994) (same).

The concern that Title VII requirements remain intact for employment discrimination claims is persuasive. To hold otherwise would be to create an avenue of relief for employees of federally funded educational institutions which differs significantly from the path afforded to other employees. Arguably, such an outcome could be justified by an apparently heightened Congressional concern that federal funds not be spent on discriminatory programs, as reasoned by Judge Preska in *Henschke*. Yet this justification appears a slim reed next to the "comprehensive and carefully balanced remedial mechanism" established by Congress in Title VII, which more substantially represents Congressional compromise and intent:

*Bowers v. Baylor University*, 862 F.Supp. 142,

[F]ollowing enactment of Title VII, Congress has been free to provide victims of employment-related discrimination with additional remedies. It has been free to do so expressly. It has been free to do so by implication, but against the background of Title VII, its intention to do so requires a powerful implication on its part. . . . Much stronger indicia than those noted in *Cannon* [441 U.S. at 707] are required to persuade [that] Congress intended to imply remedies for employment-related discrimination, altering and disturbing the comprehensive and elaborate Title VII mechanism.

*Storey*, 604 F.Supp. at 1205. Accordingly, Burrell's Title IX claim for discriminatory discharge must be dismissed as a matter of law.

### Executive Law Claim Against Roman is Timely and Will Not Be Dismissed

 The Third Amended Complaint includes a claim under the Executive Law against Roman for aiding and abetting CUNY's decision to terminate Burrell. Defendants seek to dismiss Burrell's Executive Law claim against Roman on the grounds that it is untimely. However, as Defendants themselves pointed out at oral argument, their reasoning is based on an error of law; in their moving brief, Defendants state that the statute of limitations under the Executive Law is one year, when it is in fact three years. N.Y. Civ. Prac. L. & R. 214(2) (McKinney's 1990 & 1998 Supp.); *Lightfoot v. Union Carbide*, 110 F.3d 898, 907 (2d Cir.1997); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996). The last discriminatory act alleged in the complaint occurred no earlier than September 1, 1992; Burrell filed this action on December 2, 1994, well within the three year limitation period.

### Administrative Code Claim Against CUNY Is Dismissed; Administrative Code Claim Against Roman Will Not Be Dismissed

 Claims under state law against CUNY are barred by the Eleventh Amend-

145 (W.D.Tex.1994) (same).

ment, which states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Subjects of any Foreign State." The Supreme Court has interpreted the Eleventh Amendment as barring suits in federal court by citizens against their own states. *See Welch v. Texas Department of Highways and Public Transportation,* 483 U.S. 468, 472, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 237–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 97–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Specifically, a federal court may not grant relief against state entities or state officials on the basis of state law violations. *Pennhurst,* 465 U.S. at 106; *Dube,* 900 F.2d at 595; *Jungels v. State University College of New York,* 922 F.Supp. 779, 784 (S.D.N.Y.1996) *aff'd,* 112 F.3d 504, 1997 WL 219065 (2d Cir.1997). "For purposes of enjoying Eleventh Amendment immunity, courts in this circuit have found City University to be an arm of the State of New York." *Chinn v. City University of New York,* 963 F.Supp. 218, 224 (S.D.N.Y.1997); *Davis v. City University of New York,* No. 94 Civ. 7277, 1996 WL 243256 (S.D.N.Y. May 9, 1996). This determination is based on the fact that N.Y. Educ. Law § 6205(1) requires New York State to indemnify CUNY against any claim, suit or judgment. *Moche v. City University of New York,* 781 F.Supp. 160, 165 (E.D.N.Y.1992), *aff'd without op.,* 999 F.2d 538 (2d Cir.1993); *Scelsa v. City University of New York,* 806 F.Supp. 1126, 1137 (S.D.N.Y.1992); *Davis v. Halpern,* 768 F.Supp. 968, 983–84 (E.D.N.Y.1991); *Silver v. City University of New York,* 767 F.Supp.

494, 499 (S.D.N.Y.1991); *Ritzie v. City University of New York,* 703 F.Supp. 271, 276–77 (S.D.N.Y.1989).

■ Defendants contend that the Administrative Code claim against Roman must also be dismissed because provisions of New York City's Human Rights Law, being enacted by a subdivision of the State of New York, cannot be applied to a state agency or a state employee. The City of New York derives its authority to enact laws from two sources: Article 9 of the New York State Constitution, and N.Y. Mun. Home Rule Law § 10. According to Defendants, these sources do not enable New York City to enact laws holding State agencies and agents liable for human rights violations accomplished during the transaction of State business. Defendants cite no authority for this proposition. In fact, municipal home rule principles do not apply to claims against Roman, because he is being sued in his individual capacity, not as a state officer.[7]

### The § 1983 Claim Against CUNY is Barred by the Eleventh Amendment; § 1983 Claim Against Roman Remains

The Third Amended Complaint asserts a claim pursuant to 42 U.S.C. § 1983 against CUNY and Roman for deprivation of her equal protection right to be free from sexual harassment, for deprivation of her property interest in her withheld paychecks, and for deprivation of her liberty and property interest in her employment.

■ As set forth above, the Eleventh Amendment does not allow suit against CUNY as a state entity. "The Eleventh Amendment bars a suit in federal court against a state or one of its agencies in the

---

7. Even if Roman were named in his official capacity, authority exists for the conclusion that the Administrative Code's civil rights provisions may be applied to State agencies and officials, as recently considered by this Court in *Ettinger v. State University of New York,* 95 Civ. 9893, 1998 WL 91089 at —— (S.D.N.Y. March 2, 1998). *See,* N.Y. Gen. Munic. Law § 239–s (McKinney's 1986 & 1997 Supp.)(granting concurrent jurisdiction to New York City Commission on Human Rights and New York State Division of Human Rights over discriminatory violations occurring within New York City); *Maloff v. City Commission on Human Rights,* 38 N.Y.2d 329, 332–33,

342 N.E.2d 563, 565, 379 N.Y.S.2d 788, 790–91 (1975) (holding that defendant Board of Education, though a state agency, is subject to New York City Commission jurisdiction); *Levy v. City Commission on Human Rights,* 85 N.Y.2d 740, 746, 651 N.E.2d 1264, 1268, 628 N.Y.S.2d 245, 249 (1995) (defendant New York City Transit Authority subject to jurisdiction of New York City Commission because "manifestly the Legislature has not preempted the area of human rights because it has expressly recognized the concurrent jurisdiction of the City Commission on Human Rights with respect to matters in New York City").

absence of the state's explicit consent to be sued or Congress' unequivocal abrogation of immunity." *Chinn,* 963 F.Supp. at 224 (citing *Pennhurst,* 465 U.S. at 99–100)). This jurisdictional bar exists regardless of the type of relief sought. *Id.; Dube v. State University of New York,* 900 F.2d 587, 594–95 (2d Cir.1990); *see also Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996) ("We have often made it clear that the relief sought by plaintiff suing a State is irrelevant to the question of whether suit is barred by the Eleventh Amendment.") Section 1983 does not override a State's Eleventh Amendment immunity. *Todaro v. Norat,* 902 F.Supp. 70, 72 (S.D.N.Y.1995) (citing *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Accordingly, Burrell's § 1983 claims against CUNY are dismissed. *See Jungels,* 922 F.Supp. at 786.

■ There is no jurisdictional bar, however, for claims for prospective relief against individual defendants in their official capacities, or for claims for any sort of relief against individual defendants in their personal capacities. *Jungels,* 922 F.Supp. at 786; *Dube,* 900 F.2d at 595; *Chinn,* 963 F.Supp. at 224–25. Because Burrell asserts her § 1983 claims against Roman both in his official and individual capacities, she may seek both damages and prospective relief.

■ In challenge to Burrell's § 1983 claim regarding her termination, Defendants assert that Burrell has no entitlement to employment with the State as a non-civil servant public employee. The defining element of a property interest in continued employment is "a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such claims must be determined according to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A written contract can evidence the existence of a legitimate claim of entitlement. *Sacco v. Pataki,* 982 F.Supp. 231, 239 (S.D.N.Y.1997) (citing *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)); *Petrella v. Siegel,* 843 F.2d 87, 89 (2d Cir.1988) ("when a government employee has tenure or a contract right to continued employment, that right constitutes 'property' that is protected by the fourteenth amendment's due process clause"); *Croslan v. Housing Authority for City of New Britain,* 974 F.Supp. 161, 165 (D.Conn.1997) ("it is clearly established that an employee serving pursuant to an employment agreement which provides she may be terminated only for cause has a protected property interest").

In the instant action, Burrell has stated sufficient facts to indicate that she retained a property interest in continued employment; Burrell signed an extension contract which prolonged her employment term to June 30, 1993, and she was terminated on August 31, 1992. No evidence has been submitted regarding whether Burrell's contract permitted her to be fired "at will" or for cause only, although the wording of the termination letter from Nisbett, stating that she was to be terminated because she had not verified her work status in compliance with federal regulations, raises the inference that her termination could only be for cause. Without resolution of this factual issue, summary judgment regarding Burrell's § 1983 claim for termination cannot be granted.

■ Moreover, Burrell's allegation that Roman accused her of impropriety and immoral conduct with men doing business with the Dean's office and caused this accusation to be written in her personnel file states a claim for deprivation of her liberty interest. Such a claim may be asserted based on a "charge against [plaintiff] that might seriously damage [plaintiff's] standing and associations in [plaintiff's] community," *Roth,* 408 U.S. at 573, or a "stigma or other disability that foreclose[s plaintiff's] freedom to take advantage of other employment opportunities." *Id.* A stigmatizing charge may implicate a liberty interest either when disclosed in the course of an employee's dismissal or by being placed in an employee's personnel file in circumstances such that it is "likely to be disclosed to future employers and deprive the employee of job opportunities." *Brandt v. Board of Co-op. Educational Services,* 820 F.2d 41, 45 (2d Cir.1987) (public governmental charges accompanying dismissal that impair the opportunity to obtain other employment implicate liberty interest).

■ Next, Defendants contend that all § 1983 claims against Roman are barred, because it was CUNY, not Roman, who em-

ployed Burrell and which discharged her, and therefore Roman lacks personal involvement. In order to claim damages under Section 1983, a plaintiff must demonstrate that the individually sued defendant has been personally involved in the deprivation of plaintiff's federal rights. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *Wallace v. Conroy,* 945 F.Supp. 628, 637 (S.D.N.Y.1996). Where a defendant acts in a supervisory capacity, personal involvement is demonstrated by direct participation in the alleged violation. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Davis v. Kelly,* 981 F.Supp. 178, 182 (W.D.N.Y.1997).

Defendants' assertion simply ignores the facts alleged in the complaint. Firstly, it is undisputed that Roman was responsible for interviewing and hiring Burrell. Secondly, the complaint alleges that Roman aided in Burrell's termination by advising Nisbett that she had misrepresented her work status. Further, it alleges that Roman wrote the above mentioned accusations of impropriety in Burrell's personnel file. In short, Burrell's complaint consists entirely of allegations that Roman directly participated in depriving her of her rights of equal protection, property and liberty.

██ Finally, Defendants assert that permitting assertion of a § 1983 claim for sexual harassment against Roman would constitute an "end run" around the procedural requirements of Title VII, because Burrell's sexual harassment claim against SUNY under Title VII was dismissed as untimely.

██ While "a plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant," *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993), "a plaintiff can assert a [concurrent] claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied." *Id.* (separate claims permitted where § 1983 claim cognizable violations of Constitutional provisions); *Carrero v. New York City Housing Authority,* 890 F.2d 569, 576 (2d Cir. 1989); *Jungels,* 922 F.Supp. at 785; *see also, Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994).

In the instant case, Burrell's § 1983 claim is "based on substantive rights distinct from

Title VII." *Saulpaugh,* 4 F.3d at 143. She asserts violation of her right to equal protection, property and liberty rights, and her right to due process. *See id.; Carrero,* 890 F.2d at 576 (§ 1983 claim may be concurrent with Title VII where it is based on rights to due process and equal protection); *Gierlinger,* 15 F.3d at 34 (plaintiff stated claim for equal protection violation based on sexual harassment) (citing *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir. 1986)). The fact that Burrell's § 1983 claims are founded on the same factual allegations as those underlying her Title VII claim does not prevent concurrent pleading. *Jungels,* 922 F.Supp. at 784–85 (although § 1983 claims were based on same factual allegations as those under Title VII, where § 1983 claims were based on rights distinct from those protected by Title VII, concurrent claims may be pled).

When concurrent claims under Title VII and § 1983 are pled, however, a concern is raised that the § 1983 claim may be used to avoid the "detailed and specific provisions" of Title VII, such as its requirement of exhaustion of administrative remedies, or its statute of limitations. *Great American Fed. S. & L. Assn. v. Novotny,* 442 U.S. 366, 375–76, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). In *Novotny,* the Supreme Court held that a plaintiff could not assert a claim under § 1985(3), like § 1981 a purely remedial statute, based on a violation rights provided by Title VII. This determination was meant to prevent a plaintiff from availing himself of remedies specifically excluded by Title VII, 442 U.S. at 374–75, and from avoiding the procedural requirements of Title VII. Where Title VII's requirements have been met, none of the concerns raised in *Novotny* are at issue. *Carrero,* 890 F.2d at 576–77.

The instant case presents a slightly different resolution of the *Novotny* dilemma, because there is no cause of action for individual liability under Title VII. *See Tomka v. Seiler,* 66 F.3d 1295 (2d Cir.1995). Such an action is only available under § 1983. Thus, Burrell's § 1983 claim against Roman cannot constitute an "end run" around the procedural requirements of Title VII when those requirements would not apply to her claim in the first instance.

### Section 1985 and Section 1986 As Against CUNY and Roman Are Dismissed

The Third Amended Complaint contains a claim under 42 U.S.C. § 1985, based on allegations that Defendants CUNY and Roman conspired to deprive Burrell of her rights under the Fifth and Fourteenth Amendments by terminating her, and to deprive her of her equal protection rights "as alleged herein," (presumably referring to Roman's acts of sexual harassment.) Burrell also claims, under 42 U.S.C. § 1986, that Defendants CUNY and Roman acted under color of law, pursuant to a policy to intentionally fail to train the Personnel Director, Nisbett and Roman in the performance of their duties.

 Section 1985 provides, in relevant part:

> If two or more persons in any state or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (West 1994). To state a claim under § 1985(3), a plaintiff must show that defendants: (1) engaged in a conspiracy; (2) conspired for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States. *New York State National Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement. *Rios v. Navarro*, 766 F.Supp. 1158, 1160 (S.D.Fla.1991). The conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators action." *Mian*, 7 F.3d at 1088. The Second Circuit has held that women may constitute a class for purposes of § 1985(3). *Terry*, 886 F.2d at 1359.

 Section 1986 must be predicated upon a valid § 1985 claim, *Mian*, 7 F.3d at 1088 (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir.1978)), because it provides a cause of action against anyone who has knowledge of wrongs mentioned in § 1985, and, who, "having power to prevent or aid, neglects to do so." *Id.*

 Burrell's § 1985(3) claim is barred as a matter of law because "the conspiracy requirement [of § 1985(3)] is not met by a conspiracy within a single corporate entity." *Ritzie v. City University of New York*, 703 F.Supp. 271, 278 (S.D.N.Y.1989) (quoting *Wintz v. Port Authority of New York and New Jersey*, 551 F.Supp. 1323, 1325 (S.D.N.Y.1982)). Rather, conspiracy requires participation by an external party. *Id.* at 277. Where the individual defendants named are all employees of the institutional defendant, a claim of conspiracy will not stand. *Everston v. State of New York Mortgage Agency*, No. 89 Civ. 7474, 1992 WL 6190 at *6 (S.D.N.Y.1992) ("Even were the Court to consider the individual defendants ... the claim would nonetheless fail as a matter of law. All of the individual defendants were employees of SONYMA when they allegedly committed the acts that form the basis of this lawsuit"); *Huntemann v. City of Yonkers*, No. 95 Civ. 1276, 1997 WL 527880 at *14 (S.D.N.Y. Aug. 25, 1997) (claim under 42 U.S.C. § 1985(3) not cognizable if all alleged parties to the conspiracy employed by same entity); *see also, Herrmann v. Moore*, 576 F.2d 453, 458 (2d Cir.1978) (where each of individual defendants named was trustee or faculty member of defendant law school no conspiracy claim stated); *Girard v. 94th Street and Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir.1976) (no conspiracy where all defendants were directors, officers and employees of defendant corporation).[8]

8. Defendants asserted that Burrell has no claim

under § 1985(3), because the allegations regard-

■ In her opposing papers, Burrell asserts that the conspiracy existed between Roman, Chin and Nisbett. This is not the claim stated in the complaint, however, which only avers that "defendants" conspired. Nonetheless, even if allegations regarding Chin and Nisbett were considered as part of the alleged conspiracy, Burrell has not alleged that conspiracy with sufficient specificity. "A constitutional conspiracy claim must be pled with at least some degree of particularity." *Laverpool v. New York City Transit Authority,* 760 F.Supp. 1046, 1056 (E.D.N.Y. 1991). Burrell has alleged that Roman wrote a letter to Nisbett denying that he had promised to transfer Burrell's visa, that "defendants" wrote a letter to Burrell requesting that she produce a visa petition, and that Roman and the "Director of Personnel", i.e., Nisbett, subsequently denied having any knowledge of the requirements of Federal Law as it relates to processing employees not born in the United States. These allegations show separate acts by Roman, Chin and Nisbett, but no agreed upon conspiracy. *Rios,* 766 F.Supp. at 1162. Accordingly, Burrell's claims under § 1985 and § 1986 are dismissed.

### Burrell's Remaining Claims Against CUNY are Barred by the Eleventh Amendment; State Tort Claims Against Roman are Dismissed as Untimely

■ Burrell asserts a claim for violation of the Employee Retirement Income Security Act of 1994 ("ERISA"), 29 U.S.C. § 1001 *et seq.* against CUNY. However, this claim is barred by the Eleventh Amendment. *Pennhurst,* 465 U.S. at 106. Moreover, pension plans of governmental and state agencies are expressly excluded from the coverage of ERISA. *See,* 29 U.S.C. § 1002(32).

■ Burrell asserts state law claims for IIED, and defamation and slander against CUNY and Roman, and for breach of contract against CUNY. These claims are barred as to CUNY by the Eleventh Amendment. *Pennhurst,* 465 U.S. at 106 (federal court may not grant relief against state entities or state officials on basis of state law violations); *Chinn,* 963 F.Supp. at 227 (Eleventh Amendment bars pendent state law claims against CUNY).[9]

■ Burrell's state law claims for IIED and for defamation against Roman are

ing Roman's pursuit of a sexual relationship with Burrell do not constitute class-based animus against women. In *Gierlinger,* 15 F.3d at 34, the Second Circuit held that sexual harassment constitutes a deprivation of equal protection rights for the purpose of § 1983, basing this determination on the Seventh Circuit reasoning in *Bohen,* 799 F.2d 1180. The *Bohen* Court began with the principle that sexual harassment constitutes sex discrimination in violation of the equal protection clause. *Id.* at 1185. In determining the scope of the constitutional right to be free from sexual harassment, the *Bohen* Court concluded that:

> As a general matter, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes. An equal protection plaintiff therefore need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of her membership in the class is itself enough.

*Id.,* 799 F.2d at 1187 (citations omitted). Although *Gierlinger* and *Bohen* were decided in the context of § 1983, the Seventh Circuit has also held that discrimination based on sex is invidious discrimination within the scope of § 1985(3). *Volk v. Coler,* 845 F.2d 1422, 1433, 1434 (7th Cir.1988) (because discrimination against individual woman because of sex is violation of Equal Protection Clause under § 1983, same is

true of claim under § 1985(3)) (citing *Bohen,* 799 F.2d at 1187; *see also Bertoncini v. Schrimpf,* 712 F.Supp. 1336, 1341–42 & n. 2 (N.D.Ill.1989) (plaintiff's allegations that supervisor embarked on course of activity to embarrass, discredit and punish her after she rejected his sexual advances and did so in conspiracy with another employee sufficient to state a claim under § 1985(3)). *Volk* obviously does not bind this Court, but the Second Circuit's adoption of the reasoning in *Bohen,* lends the related reasoning in *Volk* precedential value. Under the interrelated holdings of *Bohen, Volk,* and *Gierlinger,* Burrell's allegations of sexual harassment and retaliatory termination would be sufficient to satisfy the deprivation element of § 1985(3), were it not barred because of other deficiencies.

9. Even if the Eleventh Amendment did not exist, this Court would lack jurisdiction pursuant to N.Y. Educ. Law § 6224(4), which vests exclusive jurisdiction over tort and breach of contract claims against "senior colleges" in the New York Court of Claims. Sophie Davis qualifies as a "senior college" under the statute. *See,* N.Y. Educ. Law § 6202(5) (McKinney's 1985); *see also, Illickal v. Roman,* 236 A.D.2d 247, 248, 653 N.Y.S.2d 562, 563 (1st Dept.1997) (breach of contract claim asserted against Sophie Davis Medical School dismissed for lack of jurisdiction).

barred by the statute of limitations. Under New York law, the statute of limitations for intentional torts is one year. N.Y. Civ. Prac. L. & R. § 215(3).[10] For a defamation claim, the limitations period begins to run from the date of publication. *Celi v. Canadian Occidental Petroleum Ltd.*, 804 F.Supp. 465, 470 (E.D.N.Y.1992). Burrell's allegations regarding rumors begun about her by Roman, and the false accusation of misconduct placed in her work file, all occurred prior to her termination on August 31, 1992, more than a year before she filed the instant action on December 2, 1994. Burrell has not alleged that the false accusations were republished at any time subsequent to her termination. Accordingly, the defamation and slander claims must be dismissed for untimeliness. Similarly, the IIED claim regards events which occurred prior to Burrell's termination and is also barred by the statute of limitations.

Moreover, Burrell has failed to state an IIED claim, which requires that the plaintiff demonstrate: (1) defendants' extreme and outrageous conduct; (2) defendant's intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between defendant's conduct and the injury suffered; and (4) that plaintiff endures severe emotional distress. *Wolff v. City of New York Financial Services*, 939 F.Supp. 258, 263 (S.D.N.Y.1996).

The standard for extreme and outrageous conduct is extremely difficult to satisfy. *Coraggio v. Time Inc. Magazine Co.*, No. 94 Civ. 5429, 1995 WL 242047 at *6 (S.D.N.Y. April 6, 1995). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983) (quoting Restatement [Second] of Torts § 46[1] cmt d). Burrell's allegations regarding Roman's sexual harassment and retaliatory conduct, while more than reprehensible if true, do not meet this stringent standard, as indicated by similar factual circumstances presented to other courts in this Circuit. *See Coraggio, supra* (assigning plaintiff low level tasks, calling plaintiff at home on scheduled days off, usurping plaintiff's responsibilities and generally isolating and ignoring all constitutes abusive conduct but not IIED); *Walz v. American Stock Exchange, Inc.*, 91 Civ. 7694, 1992 WL 230132, at *3 (S.D.N.Y. Sept.03, 1992) (assignment of plaintiff to unsophisticated tasks, exclusion from important meetings and isolation in distant office in retaliation for registering sex discrimination complaint not IIED); *Murphy, supra*, (firing employee in humiliating manner not IIED); *Shea v. Cornell University*, 192 A.D.2d 857, 596 N.Y.S.2d 502 (3d Dept.1993) (sexual harassment in workplace is not IIED). Accordingly, Burrell's IIED and defamation claims must be dismissed.

### Conclusion

For the reasons set forth above, the following claims asserted in Burrell's Third Amended Complaint are dismissed: (1) the first claim for relief against CUNY under Title VII for sexual harassment; (2) the fourth claim for relief against CUNY pursuant to the Administrative Code, § 8–502; (3) the fifth claim for relief against CUNY and against Roman pursuant to Title IX; (3) the sixth claim for relief against CUNY pursuant to § 1983; (4) the seventh claim for relief against CUNY and against Roman in his individual and official capacities, for damages pursuant to §§ 1985 and 1986; (5) the eighth claim for relief against CUNY for discrimination the basis of national origin in violation of Title VII; (6) ninth claim for relief against CUNY and against Roman for intentional infliction of emotional distress; (7) the tenth claim for relief against CUNY and against Roman for defamation and slander; (8) the eleventh claim for relief against CUNY for breach of contract; (9) the twelfth claim for relief against CUNY for violation of ERISA.

---

**10.** Burrell contends that the statute of limitations does not apply, because her state law claims "relate back" to her EEOC charge. The EEOC charge regards claims of discrimination and is irrelevant, for tolling purposes, to claims brought under state tort law. The relevant date for the latter is the date of filing in district court.

All other claims remain. Parties will contact the court upon receipt of this opinion and schedule a pre-trial conference in preparation for trial.

It is so ordered.